### In re CRAZY EDDIE SECURITIES LITIGATION.

No. 87 C 33.

United States District Court,
E.D. New York.

June 18, 1990.

Sirota & Sirota (Howard B. Sirota, of counsel), Milberg, Weiss, Bershad, Specthrie & Lerach (David J. Bershad, Michael C. Spencer, of counsel), New York City, for plaintiffs.

Milbank, Tweed, Hadley & McCloy (C. Stephen Howard, Susanne M. Toes, of counsel), Los Angeles, Cal. for plaintiff Oppenheimer–Palmieri Fund, L.P.

Tuttle & Taylor Inc., Los Angeles, Cal., Folkenflik & Associates (Max Folkenflik, of counsel), New York City, for plaintiffs Entertainment Marketing, Inc., and Elias Zinn.

Kronish, Lieb, Weiner & Hellman (William O'Brien, Justin N. Feldman, William J. Schwartz, Ivan Kline, of counsel), New York City, for defendant Eddie Antar.

Pryor, Cashman, Sherman & Flynn (James A. Janowitz, Jamie M. Brickel, of counsel), New York City, for defendant Crazy Eddie, Inc.

Gersten, Savage, Kaplowitz & Curtin (Marvin Gersten, of counsel), New York City, for defendants Sam Antar, Mitchell Antar and Allen Antar.

Friedman & Kaplan (Bruce S. Kaplan, of counsel), New York City, for third-party defendant Eddie H. Gindi.

Kraft & MacManimon (Michael A. Lampert, of counsel), Newark, N.J. for defendant David Pardo.

Kaye, Scholer, Fierman, Hays & Handler (Steven Glassman, of counsel), New York City, for defendant Oppenheimer & Co., Inc.

Shearman & Sterling (Kenneth M. Kramer, of counsel), New York City, for defendant Peat Marwick Main & Co. and KMG Main Hurdman.

Davis, Markel & Edwards (Thomas J. Sweeney, III, of counsel), New York City, for defendant Peat Marwick Main & Co.

Kelley, Drye & Warren (John P. Marshall, of counsel), New York City, for defendant James H. Scott, Jr.

Weil, Gotshal & Manges (Dennis J. Block, of counsel), New York City, for defendants Salomon Brothers, Inc., Bear Stearns & Co., Inc. and Wertheim & Co., Inc.

William H. Saltzman, New Rochelle, N.Y., pro se.

Morgan, Lewis & Bockius (Kevin Rover, of counsel), New York City, for defendant David V. Panoff.

Eisenberg & Tanchum (David M. Rubin, of counsel), for third-party defendant Abraham Grinberg.

Cheriff & Warner (Jonathon D. Warner, of counsel), New York City, for defendant Sam E. Antar.

Beldock Levine & Hoffman (Brian E. Mass, of counsel), New York City, for defendant Isaac Kairey.

Leader & Berkon (Frederick D. Berkon, of counsel), New York City, for defendants Solomon E. Antar, Eddy Antar, Steven Pasquariello, Edmond Levy and Carl G. Zimel.

Wilson Elser Moskowitz Edelman & Dicker (Richard Oelsner, of counsel), New York City, for defendants Penn and Horowitz and J. Liebman & Co.

NICKERSON, District Judge.

This case was the subject of an earlier Memorandum and Order, *Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962 (E.D.N.Y. 1988), *vacated in part,* 714 F.Supp. 1285 (E.D.N.Y.1989), familiarity with which is assumed.

In December 1989, Magistrate Caden ordered certain plaintiffs to disclose to all

parties an investigative report and witness interviews that Crazy Eddie, Inc. (the Company) compiled and released to those plaintiffs (Plaintiffs) as parties to an agreement with the Company to cooperate in prosecuting claims against former management. The Company appeals the order, arguing that the attorney-client and work-product privileges prohibit disclosure. The Plaintiffs do not appeal.

The factual background is as follows. In November, 1987, the shareholders of the Company elected a new slate of directors, who installed new management. Concerned that the previous officers had absconded with funds, the Company conducted a physical inventory which disclosed a book inventory shortfall of approximately $65 million.

The Company then directed Akin Gump Strauss Hawer & Feld (Akin Gump), a New York law firm, to conduct an investigation, and sought legal advice as to the Company's legal liability and any grounds for recovery against former management. Akin Gump interviewed employees and other witnesses, conducted a document search, analyzed documents, and hired and consulted with a litigation support group from Touche, Ross & Co. (Touche Ross) concerning the available evidence and accounting issues.

In the meantime, former shareholders, including the Plaintiffs, sued the Company, former management and its auditors, claiming to have been defrauded. In January 1988, the Company entered into a Memorandum of Understanding (the Understanding) with counsel for the Plaintiffs. The parties agreed, among other things, to prosecute jointly claims against former management and to cooperate in the Company's defense of claims against it for indemnification and contribution.

The Understanding further provided that "Touche, Ross will be jointly engaged by and work for" both the Plaintiffs and the Company, and that Plaintiffs would "upon request, be furnished with any and all copies of documents reviewed or generated by Touche Ross and/or Akin, Gump in their investigations and related analysis." The

Company waived any attorney-client or work-product privilege it had as to Akin Gump's "investigation and related analyses" of the facts underlying the claims to be brought. *See* Understanding, Section 1(g).

Akin Gump delivered to the Company its interim investigative report (the Report), dated February 25, 1988, and related witness interviews (Interviews). The Report was marked "Privileged and Confidential Attorney Work Product." Sixteen pages long, the Report analyzes conversations with the Company's employees, and includes the conclusions, opinions and legal theories of counsel.

The Interviews are summaries made by counsel of thirty two interviews of employees of the Company. Most of these were lower level employees, although several executives were questioned. Five employees—Joyce Kirsch, Michael Graff, Arnold Spindler, David Neiderbach, and Abraham Grinberg—have refused to be deposed on the events in issue, claiming their Fifth Amendment right against self incrimination. Others may also refuse to testify or be deposed.

The Company disclosed the Report and Interviews to its insurance carrier, to its consultants Touche Ross, and to counsel for Plaintiffs. Two of the Company's new directors, Elias Zinn and Victor Palmieri, released the Report and Interviews to counsel for the Oppenheimer–Palmieri Fund, L.P. (the Fund) and Entertainment Marketing, Inc. (Entertainment Marketing), large shareholders of the Company's stock, for preparation of a suit against the former auditors and officers of the Company.

Defendant Eddie Antar moved to discover the Report and Interviews. The Plaintiffs and the Company, now under the protection of the Bankruptcy Court, objected, claiming the work-product and the attorney-client privileges. On December 27, 1989, the magistrate held that the Plaintiffs had no such privileges, that the Company waived any privileges by providing the documents to Plaintiffs' counsel, and that the documents were discoverable by

the other parties. The Company now appeals the magistrate's order.

### a) The Bankruptcy Stay

■ The Company argues that the order violates the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)(3). Under this section, the filing of a petition in bankruptcy operates as a stay of "any act to obtain possession of property of the estate or property from the estate." The Company argues that its attorney-client and work-product privileges are "property" within the meaning of that section.

The court finds no authority for this. Even if the Company had the privileges claimed, the magistrate's determination of the scope or existence of a privilege is not an "act to obtain possession of property." The purpose of the stay is "to prevent an uncontrolled scramble to liquidate the estate." *In re Continental Airlines, Inc.,* 61 B.R. 758, 777 (S.D.Tex.1986). Moreover, an alleged privilege of the debtor in materials already possessed by another party is not property that is an asset over which the parties to the bankruptcy proceeding may scramble.

### b) Attorney-Client Privilege

■ The court may reverse the magistrate's order only if it is contrary to law or if the factual findings are clearly erroneous. *See Citicorp v. Interbank Card Asso.,* 478 F.Supp. 756, 765 (S.D.N.Y.1979).

■ The action asserts a federally based claim. Thus, the extent of the attorney-client privilege is a matter of federal common law, governed "by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Fed.R. Evid. 501.

The purpose of the attorney-client privilege is " 'to encourage clients to make full disclosure to their attorneys.' " *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981), *citing Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Such full disclosure and the resulting "sound legal advice or advocacy" promote "the observance of law and the administration of jus-

tice." *Upjohn Co., supra,* 449 U.S. at 389, 101 S.Ct. at 682.

Although there has been powerful criticism of the rule allowing corporations to assert the privilege, C.A. Wright & K.W. Graham, *Federal Practice and Procedure* § 5476 (Wright & Graham) (1986), *passim,* the Supreme Court has adopted that rule. *Upjohn, supra,* at 389–390, 101 S.Ct. at 682–683. The corporate privilege is, of course, most important to members of upper level management who control the corporation. *See* Wright & Graham, § 5476, at 140–48, 150–72. The officials responsible for company operation naturally wish to be able to talk freely to corporate counsel. Lower level employees do not generally ask advice of counsel. When they reveal information to counsel, they are likely to do so under orders from their superiors and not in reliance on the corporation's privilege. Wright & Graham, § 5476, at 145–146.

The theory of the Supreme Court in extending the privilege to the communications of the lower level employees is to encourage superiors to seek from employees information presumably critical in uncovering possible violations of law. *See Upjohn, supra,* at 392, 393 n. 2, 101 S.Ct. at 684, 684 n. 2; *see also Independent Petrochem. Co. v. Aetna Cas. & Sur.,* 654 F.Supp. 1334, 1364 (D.D.C.1986); Wright & Graham, § 5476, at 147.

But because the privilege "stands in derogation of the public's 'right to every [person's] evidence,' " *In re Horowitz,* 482 F.2d 72, 81 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (citations omitted), the courts have strictly confined it " 'within the narrowest possible limits consistent with the logic of its principle.' " *Id.*

Thus, for management to disclose privileged communications to third parties is generally to waive the privilege, thereby preventing the risk of conspiracies to suppress evidence. *See Permian Corp. v. United States,* 665 F.2d 1214, 1219, 1221 (D.C.Cir.1981); *Radio Corporation of America v. Rauland Corp.,* 18 F.R.D. 440, 443 (N.D.Ill.1955); *Rediker v. Warfield,* 11

F.R.D. 125, 127 (S.D.N.Y.1951); Wright & Graham, § 5493, at 461 n. 21.

■ The Company argues that because it has a "common interest" with the Plaintiffs and the Fund in suing former management the privilege should extend to the shared communications.

It is true that courts have made narrowly drawn exceptions to the general waiver rule. A recognized exception—the "joint defense" exception—protects communications in a criminal case between counsel and their laymen codefendants who have "common interests" in the defense. *See, e.g., U.S. v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989), *United States v. McPartlin,* 595 F.2d 1321, 1337 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). The criminal defendant may understandably be fearful of revealing to counsel information that, if disclosed to the government, might lead to his conviction. By offering protection to communications between codefendants and their counsel, the court promotes trust and arguably furthers disclosures.

In addition, the sharing of information between codefendants accused of crime and their attorneys may be essential to ensure each defendant receives effective assistance of counsel under the Sixth Amendment. *Id.* at 1336, Wright & Graham, § 5472, at 78.

Some commentators and, indeed, some courts would extend the privilege to client communications disclosed in civil cases by an attorney to counsel for parties who share a "common interest." *See* Weinstein & Berger, 2 Weinstein's Evidence (1989), ¶ 503(b)[06], and cases cited. This court holds that such a broad rule should apply only to the extent that it promotes the interests recognized by the Supreme Court in *Upjohn.*

In this case, the Company's new management ordered the employees to disclose the matters contained in the Report and Interviews. No one suggests that the employees spoke to Akin Gump under the impression the corporate privilege might extend to a sharing of their statements with the Plaintiffs. It seems certain the employees did not know information would be released to the Fund.

Similarly, new management's incentive to investigate and interrogate its employees was hardly affected by the prospect of sharing the information with the Plaintiffs or the Fund. New management allegedly undertook the investigation to challenge the employment contracts the Company had with former management. That motive was unaffected by any agreement with Plaintiffs. The Understanding provides that the Company was to bear the full cost of the investigation. The Company had the resources to retain and in fact retained effective and knowledgeable counsel. There is no evidence that the possibility of extending the privileged disclosures to the Plaintiffs or the Fund affected the extent or intensity of the investigation.

It is true that to some degree the extension of the privilege in a civil case may sometimes encourage parties to make further investigation. But here the Company's objective is not to allocate the burden of seeking out information. Almost all of the pertinent information was presumably in the hands of the Company. Its purpose is to make it more difficult for the defendants to obtain information.

In this court's opinion the purposes of the privilege would not be served by upholding it here. The public interest in disclosure outweighs the countervailing interests in maintaining confidentiality. The magistrate's ruling was not clearly erroneous. The Company waived the attorney-client privilege over the Report and Interviews.

### c) Work–Product Privilege

The work-product privilege as embodied in the Federal Rules of Civil Procedure protects an interest different from that of the attorney-client privilege.

If "documents" or other "tangible things" are relevant and "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" the material is discoverable only if the party seeking discovery has a "substantial need" for the

materials to prepare its case and is unable without "undue hardship" to obtain the substantial equivalent by other means. Fed.R.Civ.P. 26(b)(3).

■ Where a substantial probability of litigation exists, *Weil Ceramics & Glass, Inc. v. Work,* 110 F.R.D. 500, 505 (E.D.N.Y. 1986), the court in considering the work-product privilege must balance the needs of the adversary system to encourage an attorney's preparation for the client against society's interest in revealing all relevant facts. *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371 (D.C.Cir.1984); *see Hickman v. Taylor,* 329 U.S. 495, 510–511, 67 S.Ct. 385, 393–394, 91 L.Ed. 451 (1947).

■ The work-product privilege encourages counsel's diligent preparation of the case, fosters a similar effort by opposing counsel without reliance on the adversary's effort, and thereby furthers the adversary process on the supposition that the truth will out. Thus, the privilege protects information "against opposing parties, rather than against all others outside a particular confidential relationship." *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980). Counsel may therefore share work product, including ideas, opinions, and legal theories, with those having similar interests in fully preparing litigation against a common adversary. Conversely, if a party discloses for reasons not related to the facilitation of its trial preparation, for example, to an adversary primarily to encourage settlement, that party is deemed to have waived the privilege. *See, e.g., In re Chrysler Motors Corp. Overnight Evaluation Program,* 860 F.2d 844, 846 (8th Cir.1988); *In re Subpoenas Duces Tecum, supra,* 738 F.2d at 1372; *Grumman Aerospace Corp. v. Titanium Metals Corp.,* 91 F.R.D. 84 (E.D.N.Y.1981).

■ In this case, the Report and Interviews appear to be attorney work product prepared in anticipation of litigation. The Plaintiffs and the Company agreed in the Understanding to pursue common claims against former management. The Understanding states that counsel shall "in good faith cooperate in such joint prosecution." The litigation they anticipated was "against a common adversary on the same issue or issues," so that they had "strong common interests in sharing the fruit of the trial preparation efforts," justifying assertion of the privilege. *United States v. American Tel. and Tel., supra,* 642 F.2d at 1299.

Common interests "should not be construed as narrowly limited to co-parties." *Id.* It is enough that the Company had a common interest with the Fund and Entertainment Marketing on particular issues against common adversaries.

The court holds that the Report and Interviews are discoverable only to the extent the defendants establish the prerequisites required by Rule 26(b)(3) of the Federal Rules of Civil Procedure.

The magistrate should determine whether Antar and other defendants have "substantial need" of the materials and are "unable without undue hardship to obtain substantial equivalent of the materials by other means."

The court remands to the magistrate for further proceedings in accordance with the Memorandum and Order.

So ordered.