**In re VISA CHECK/MASTERMONEY ANTITRUST LITIGATION.**

No. 96–CV–5238 (JG).

United States District Court, E.D. New York.

Jan. 3, 2000.

Melvin A. Schwarz, Special Counsel for Civil Enforcement, U.S. Dept. of Justice, Antitrust Div., Washington, DC, for Intervenor United States of America.

George W. Sampson, Hagens & Berman, Seattle, WA, Lloyd Constantine, Constantine & Partners, New York City, for plaintiffs.

Mark A. Kirsch, Rogers & Wells LLP, New York City, for defendant MasterCard International, Inc.

M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe, San Francisco, CA, Philip H. Curtis, Arnold & Porter, New York City, for defendant Visa U.S.A., Inc.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

The United States, by the Antitrust Division of the Department of Justice ("the Government"), has moved for (i) permission to intervene for the limited purpose of seeking modification of the Court's protective order; (ii) modification of that order to allow plaintiffs' counsel to share with the Government their analyses of discovery documents possessed by both plaintiffs and the Government; and (iii) an order stating that such sharing would not waive any applicable privilege, including work product protection. The Government's motion is supported by the plaintiffs and opposed by the defendants. For the reasons discussed in this memorandum, the motions are granted.

## BACKGROUND

Wal–Mart and a number of other retailers instituted this action against Visa and MasterCard in October 1996 (the "Wal–Mart action" or the "Wal–Mart case"). The plaintiffs contend that they are the victims of an illegal tying arrangement, under which the defendants force them to accept Visa Check and MasterMoney debit cards—for which they must pay "supra-competitive [and] exorbitant" rates—as the price of accepting the "ubiquitous and dominant" Visa and Master-Card credit cards. (Second Amended Consolidated Class Action Complaint, ¶ 2–4.) Contending that the arrangement violates Sections 1 and 2 of the Sherman Antitrust Act, the plaintiffs seek treble damages and various forms of injunctive relief.

In June 1998, the parties and Magistrate Judge Roanne L. Mann signed a Stipulation

& Order for the Protection and Exchange of Confidential Information. (Exhibit 1 to Declaration of Mark A. Kirsch ("Protective Order").) The Protective Order includes the following provision:

> All information including, without limitation, documents writings, video or audio tapes, computer-generated or recorded information in any form, materials, oral or written testimony, declarations, affidavits, depositions or statements, whether or not transcribed or recorded, disclosed or obtained by or from any person, whether or not a party, in response to any discovery method authorized or permitted by the Federal Rules of Civil Procedure, or produced voluntarily in lieu of such discovery (hereinafter "Information") shall be used only for the purpose of this litigation and not for any other purpose.

(*Id.* ¶ 1.)

The Order also states that "[t]he parties may apply to the Court for modification of this Order." (*Id.* ¶ 12.)

As part of discovery in this case, the defendants provided plaintiffs' counsel with approximately three million pages of documents to review; plaintiffs' counsel selected roughly half of those pages for production on CD–ROM. (Memorandum by the United States in Support of Its Motion to Intervene at 2.)

Subsequently (in October 1998), the Antitrust Division of the United States Department of Justice ("the Government") filed an antitrust complaint against Visa and Master-Card in the United States District Court for the Southern District of New York. *See United States v. Visa U.S.A., et al.*, No. 98 Civ. 7076(BSJ) (the "Government action" or the "Government case"). That complaint alleges that the same large banks that control Visa also control MasterCard; that the banks use this control to prevent competition between the two cards; and that they also use their control to prevent banks that issue the dominant Visa and MasterCard from issuing competing cards, such as American Express and Discover/Novus. There is a protective order in the Southern District case, similar in relevant part to the one at issue here.

While the Government was bringing its case in the Southern District, the Federal Trade Commission was investigating Visa and MasterCard's debit card practices, including those at issue in the action before this Court. In January 1999, the Commission transferred the investigation to the Department of Justice's Antitrust Division.

In connection with the Government action, the Government asked Visa and MasterCard to provide it with the three million pages of documents provided to counsel for plaintiffs in the Wal–Mart action. After initially refusing, the defendants provided all the discovery to the Government in January 1999 and agreed to provide the Government with copies of all discovery in the Wal–Mart case on an ongoing basis.[1]

Given the massive quantity of documents at issue, the Government would like access to plaintiffs' counsels' analyses of those documents. Plaintiffs' counsel is willing to share this work with the Government, so long as its doing so will not waive any applicable privilege, including work product protection. The Government therefore made the instant motions, with support from the plaintiffs.

## DISCUSSION

### A. Motion to Intervene

The Government has moved for permissive intervention under Fed.R.Civ.P. 24(b). Such intervention is committed to the discretion of the district court. *See H.L.*

---

1. The agreement stated that the Government would not "provide assistance or suggest explicitly or implicitly lines of inquiry, questions, requests, strategies or tactics to plaintiffs' counsel in the Wal–Mart litigation to be used in deposition, document requests, interrogatories, requests for admissions or other discovery in that case." However, the agreement also provided that:

 > This agreement is without prejudice to the parties' positions regarding whether plaintiff

 may communicate with plaintiffs' counsel in the Wal–Mart litigation regarding any information designated as confidential or highly confidential in either this action or the Wal–Mart litigation. The parties recognize that this issue is yet to be resolved by litigation or agreement.

 (Letter from Kenneth A. Gallo to Melvin A. Schwarz (Jan. 15, 1999) (Exhibit 4 to Declaration of Melvin A. Schwarz).)

*Hayden Co. of New York, Inc. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). Among the factors to be considered are (i) whether permitting the intervention would unduly delay or prejudice the adjudication of the dispute among the original parties to the litigation; (ii) the nature of the intervenor's interests; (iii) whether those interests could be adequately represented by existing parties; and (iv) whether permitting intervention will assist in developing and resolving the factual and legal disputes in the litigation. *See id.* (citing Rule 24(b); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir.1977)).

■ Consideration of these factors, none of which is dispositive, leads me to grant the Government's motion to intervene for the limited purpose asserted. First, the defendants do not claim that granting the motion would lead to undue delay or hinder the court's ability to adjudicate this case. Second, the Government has a significant interest in obtaining these materials in order to efficiently prosecute its action without unnecessarily duplicating effort already expended by counsel for Wal–Mart. Third, although the plaintiffs support the Government's motion, the Government is obviously in the best position to advance its claim for a modification of the Protective Order; it wants copies of memoranda and analyses that plaintiffs already have. Fourth, although granting intervention will not advance consideration of the core issues of this case, it will further consideration of the proposed modification of the Protective Order, which, given the fact that the plaintiffs join in the Government's application, must be decided whether or not the Government is permitted to intervene. *See United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 537 (S.D.N.Y.1996) ("[I]ntervention under rule 24 is the proper mechanism for a non-party to seek modification of a protective order and thus to gain access to information generated through judicial proceedings."), *aff'd sub nom. United States v. Bleznak*, 153 F.3d 16 (2d Cir.1998); *see also Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291, 294 (2d Cir.1979) (suggesting that Government should have sought intervention under Rule 24 as means of seeking modification of protective order).

### B. *Modification of the Protective Order*

This case is virtually indistinguishable from the Seventh Circuit's decision in *American Tel. & Tel. Co. v. Grady*, 594 F.2d 594 (7th Cir.1978) (*per curiam*), which I find to be persuasive authority in support of the Government's motion. *Grady* arose out of an antitrust action filed by MCI against AT & T in the United States District Court for the Northern District of Illinois in 1974. *See id.* at 595. Discovery in that case proceeded under the terms of a protective order similar to the one in this action. *See id.*

Later in 1974, the United States filed its own antitrust action against AT & T in the United States District Court for the District of Columbia. *See id.* In September 1978, Judge Greene, who was presiding over the Government's suit, ordered MCI to provide the Government with all the discovery MCI had received from AT & T in the Illinois action. *See id.* After a denial of AT & T's writ of mandamus and several stays, MCI complied with the order. *See id.*

In the meantime, Judge Grady, who was presiding over the Illinois case, granted the Government's motion to modify his protective order to allow it access to all discovery in that case. *See id.* at 596. Treating the decision as an appealable "collateral order," the Seventh Circuit affirmed. *See id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). Given the fact that the Government already had all the written discovery materials pursuant to Judge Greene's order, the court noted that the only practical effect of modifying the protective order in the Illinois case was to allow MCI to provide the Government with deposition transcripts and with MCI counsel's analyses of all the discovery material. "We are impressed with the wastefulness of requiring government counsel to duplicate the analyses and discovery already made." *Id.*

■ Despite *Grady's* obvious relevance to this case and the Government's reliance on it, defendants do not even cite the case, much less attempt to distinguish it. The cases on which they do rely are inapposite:

all involved a non-party's attempt to obtain actual discovery materials, rather than merely counsel's analyses of materials already provided. Under such circumstances, parties' and witnesses' reasonable reliance on a protective order can outweigh the Government's interest in obtaining the material. For instance, in *Martindell v. Intern. Tel. & Telegraph Corp.*, 594 F.2d 291, the Second Circuit affirmed the district court's refusal to modify a protective order to give the Government access to civil deposition transcripts that it wanted in connection with a criminal investigation. *See id.* at 297. Citing the critical function protective orders play in facilitating adequate discovery in civil litigation, the court said that allowing the Government access to the previously-protected transcripts could have a chilling effect on witnesses' willingness to testify under similar circumstances in the future. *See id.* at 295–96. It was in this context that the Court offered language that defendants here contend establishes a high hurdle for efforts to modify protective orders:

> [A]bsent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and ... such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge.

*Id.* at 296.

When this passage is read in context, it is clear that no showing of "extraordinary circumstances or compelling need" is required in this case. The proposed amendment will not upset witnesses' expectations regarding the Protective Order. If those expectations have been disappointed, it was the defen-

dants' voluntary transmittal of the discovery material to the Government that delivered the blow. Allowing plaintiffs' counsel to provide their *analyses* of materials already provided to the Government would not undermine defendants' legitimate expectations in the least.

Other cases relied upon by defendants are similarly distinguishable, as each involved Government attempts to obtain actual discovery materials, as opposed to work product involving discovery materials already provided. *See Minpeco S.A. v. Conticommodity Servs., Inc.*, 832 F.2d 739, 741 (2d Cir.1987) (involving Commodity Futures Trading Commission's attempt to subpoena discovery documents subject to a protective order); *Hayden*, 797 F.2d at 87 (involving State of New York's efforts to obtain all "documents produced to [plaintiff] by [defendant] in the instant litigation as well as all of [plaintiff's] work product relating to those discovered documents"); *Botha v. Don King Prods., Inc.*, No. 97 Civ. 7587(JGK), 1998 WL 88745, at *1 (S.D.N.Y. Feb. 27, 1998) ("[T]he only matter currently before the Court is the Government's application to unseal Mr. King's deposition.").

 "[T]here is no question that a Rule 26(c) protective order is subject to modification," and a decision to modify such an order is "committed to the sound discretion of the trial court." *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir.1987). In the exercise of that discretion, I have concluded that the Protective Order should be modified in the manner proposed by the Government.[2]

Defendants profess concern that the requested modification to the Protective Order will allow a "two-way exchange of information, which will unfairly increase the discovery burden on MasterCard and Visa." (Defendants' Memorandum in Opposition to Government's Motion to Intervene at 13.) To the extent this argument expresses a fear

---

**2.** In reaching this conclusion, I reject the Government's contention that I deem the statute governing civil investigative demands, *see* 15 U.S.C. §§ 1311–1314, as dispositive or at least instructive. Since the Government has not invoked its powers under that statute, it has no relevance to the issue before me. *Cf. Minpeco*, 832 F.2d at 743 (noting that Government has power to seek modification of a protective order with or without a civil investigative demand, and that different standards apply).

that attorneys for the Department of Justice will violate the protective order issued in connection with the Government case, it goes beyond my jurisdiction. I am confident that the defendants will be able to pursue available remedies with Judge Jones, who is presiding over that litigation, in the event her order is violated.

Defendants' further contention that granting the requested order would force them to prepare each witness to be deposed not only by plaintiffs to this action, but also by a "phantom plaintiff," the Department of Justice, is baseless. Again, if defendants are concerned about violations of the Southern District protection order, they may pursue their remedies there. Furthermore, given the defendants' agreement to provide the Government with all discovery produced in this case on an ongoing basis, this concern (to the extent it is valid at all) will be present whether the protection order is modified or not.

## C. Work–Product Protection

■ The work product doctrine extends a conditional immunity from disclosure for materials "prepared in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). There is no dispute that the analyses the Government seeks are the work product of plaintiffs' counsel. The parties disagree, however, on whether plaintiffs' intended transmittal of the materials to the Government would constitute a waiver of the work-product protection, thus rendering the analyses discoverable by defendants.

■ Defendants' argument that the transmittal would constitute a waiver of work-product protection confuses the doctrine with the attorney-client privilege, which is subject to waiver whenever a previously-privileged item is shared with a third party. The reason for that strict rule is clear. The attorney-client privilege exists to protect the confidentiality of communications between lawyer and client; disclosure to a third party destroys that confidentiality and thus waives the privilege. The purpose behind the work-product doctrine is narrower: it is to keep counsel's work from his opponent in the litigation so that it will not be used against him. *See In re Crazy Eddie Sec. Litig.*, 131 F.R.D.

374, 378–79 (E.D.N.Y.1990); 8 Charles A. Wright & Richard L. Marcus, *Federal Practice & Procedure* § 2024, at 367–68 (2d ed.1994). Waiver should therefore be carefully calibrated to this purpose:

> [T]he result should be that disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information. Most cases have so held and have found no waiver from disclosure.

Wright, *supra,* § 2024, at 369; *see also In re Crazy Eddie Sec. Litig.*, 131 F.R.D. at 379 ("[T]he privilege protects information 'against opposing parties, rather than against all others outside a particular confidential relationship.' ") (quoting *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980)).

Plaintiffs' counsel's sharing its analyses of discovery materials with the Government, which is litigating and investigating sufficiently related claims against the same defendants, would not substantially increase the likelihood of Visa and MasterCard's obtaining the documents. Accordingly, the kind of transmittal authorized by the modification of the Protective Order would not constitute a waiver of work-product protection. *See In re Crazy Eddie Sec. Litig.*, 131 F.R.D. at 379 ("Counsel may therefore share work product, including ideas, opinions, and legal theories, with those having similar interests in fully preparing litigation against a common adversary.").

Another case involving the interplay between the antitrust actions of MCI and the Government against AT & T is instructive on this point. Pursuant to the litigation that culminated in the previously-discussed Seventh Circuit opinion in *Grady*, MCI was permitted to provide the Government with discovery it had received from AT & T, along with "any explanatory material or information which would be helpful to an understanding of the items produced." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1288 (D.C.Cir.1980). Subsequently, AT & T served a document request on the United States, seeking some of the analytical

documents counsel for MCI had provided the Government. *See id.* at 1289. The district court subsequently held that the documents had to be disclosed because, *inter alia,* MCI had waived its work-product protection when it disclosed the materials to the Government. *See id.* at 1290.

The D.C. Circuit reversed, concluding that the district court had conflated the work-product doctrine with the attorney-client privilege. *See id.* at 1299. Disclosure of attorney analysis to a third party did not lead to waiver of work-product protection, so long as there were "common interests" between the transferor and transferee. *See id.* "So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts." *Id.* Given the alignment, the transferee was "not at all likely" to provide the disclosed material to the common adversary; thus, disclosure under these circumstances would not constitute a waiver of the work-product protection. *See id.*

The defendants seek to distinguish AT & T by pointing out that there the private plaintiff and Government were pursuing the same claims against a common defendant, while here the claims are different in the two actions. This argument inappropriately elevates form over substance. The "common interests" requirement exists as a proxy for the true concern: whether the transferee is likely to share the transferred material with the adversary. The more common the interests between transferor and transferee, the

less likely it is that such sharing would take place. Strict identity between causes of action is not necessary for work-product protection to survive the transfer.

While the Government's claims in its action and those of private plaintiffs in this case are not co-extensive, I find that they are sufficiently similar to put the putative transferor and transferee into alignment against a common adversary.[3] Moreover, the investigation transferred by the FTC to the Justice Department involves "essentially the same issues at stake in the instant litigation." (Declaration of Kenneth A. Gallo, dated April 9, 1999, ¶ 12.) Thus, disclosure by the Government of the analyses to Visa and MasterCard under these circumstances is virtually unthinkable. The proposed transfer would therefore not act as a waiver of work-product protection.[4]

### CONCLUSION

Upon consideration of the motion by the United States of America ("the United States") to intervene in this action and to modify this Court's protective order dated June 23, 1998, and supporting papers, as well as the motion to modify filed by plaintiffs, and the opposition papers filed by defendants, the Court hereby ORDERS that:

1. The motion to intervene by the United States solely for the limited purpose of seeking a modification of this Court's protective order is GRANTED.

2. The motions by intervenor United States and plaintiffs to modify this Court's Protective Order dated June 23, 1998, are GRANTED. That Protective Order is here-

---

**3.** The Government notes the following common issues between its case and Wal–Mart's:

> (1) the existence of a general purpose card market; (2) that debit cards are not part of the general purpose card market; (3) that Visa and MasterCard exercise market power jointly through their shared ownership and governance; (4) that the government banks of both associations control and orchestrate the exercise of that market power; and (5) that the member banks collectively restrain network-level competition by enforcing exclusionary rules that prohibit Visa members from issuing cards on a competitive network (other than MasterCard), and prohibit MasterCard members from issuing cards on a competitive network (other than Visa).

(Government Memorandum at 6–7.)

**4.** *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F.Supp. 591 (S.D.N.Y.1998), a case cited by defendants in support of their waiver argument, is inapposite. In that case, plaintiffs' counsel made apparently unsolicited submissions to various government agencies in the United States and abroad in hopes of encouraging them to take action against the defendant. At the time of the submissions, those agencies had not begun litigation against the defendant, and there is no indication that they even had ongoing investigations. Under these circumstances, the plaintiff and "uncommitted" government agencies were not "allies," so the submissions acted as a waiver of work-product protection. *See id.* at 593. The facts of this case are obviously quite different.

316

by AMENDED to permit plaintiffs' counsel to provide their analyses of any products of discovery to the Antitrust Division of the Department of Justice ("the Division"), so long as such products of discovery are already in the possession of the Division.

3. The United States may use such analyses provided by plaintiffs' counsel for any law enforcement purpose, including, but not limited to, prosecution of claims against Visa and MasterCard in the pending action in the United States District Court for the Southern District of New York, the Division's current investigation of debit card claims, and any litigation which may arise out of such investigation.

4. The disclosure by plaintiffs' counsel to the Division of counsels' analyses of any products of discovery, mental thoughts, impressions, or opinions shall not waive as to such information either its confidentiality or any applicable privilege, including, but not limited to, the work product doctrine.

5. Subject to Paragraphs 3 and 4 hereof, analyses of discovery materials provided by plaintiffs' counsel pursuant to Paragraph 2 of this order shall be subject to the same confidentiality protections regarding disclosure to non-parties afforded those discovery materials by the Stipulated, Amended Protective Order dated December 11, 1998, entered by the Honorable Barbara S. Jones of the United States District Court for the Southern District of New York.