**Basil FULLERTON, Plaintiff,**

v.

**PRUDENTIAL INSURANCE CO., Defendant.**

**No. 99 CIV. 4453(CM)(LMS).**

United States District Court, S.D. New York.

May 5, 2000.

Christopher D. Watkins,

Lisa Barse Bernstein, New York City.

## DECISION AND ORDER AFFIRMING IN PART AND REVERSING IN PART AN ORDER OF THE HON. LISA M. SMITH DATED MARCH 23, 2000.

McMAHON, District Judge.

On rare occasions, an appeal from a Magistrate Judge's discovery order presents an interesting issue, one that cannot be resolved quickly or by the simple expedient of invoking the rule that such an order cannot be overturned by the District Court unless it is clearly erroneous. Fed.R.Civ.P. 72(a). This is one of those rare occasions.

On March 3, 2000, Plaintiff in this employment discrimination action moved to compel the production of documents contained on Defendant's privilege log and to reopen discovery in order to continue, at Defendant's cost, the depositions of Martin Duff and Dan Green. On March 9, 2000, the Magistrate Judge permitted the depositions to continue (albeit at Plaintiff's own expense). They were not resumed.

In addition, following an *in camera* inspection, Judge Smith ordered the production of certain allegedly privileged documents that had not been listed on the privilege log. Judge Smith told counsel for Defendant to send her a letter brief explaining whey the remaining attorney-client privileged documents ought not be produced, and indicated that she would rule on that question at a subsequent conference on March 23. Prudential took no appeal from that limited ruling, and it produced the documents on March 13.

Prudential actually went further on March 13 and produced a number of allegedly attorney-client privileged documents that Judge Smith had NOT ordered be produced. Prudential stated that it was doing so because Judge Smith, while not compelling their production, had expressed "concern" about Prudential's use of the attorney-client privilege. Judge Smith had indeed expressed such concern; she had, however, made no final ruling on whether Defendant was attempting to use the privilege as both sword and shield, and had in fact told the parties that they were free to brief the issue. Nonetheless, of its own volition, Prudential revised its privilege log to include only documents that it contended were attorney work-product and produced the challenged attorney-client privileged documents.

On March 17, Plaintiff moved to compel production of the remaining privileged documents on the ground that Prudential, by going beyond Judge Smith's order at a time when she had reserved decision on the issue of attorney-client privilege, had voluntarily waived its privilege. Additionally, Fullerton moved for leave to reopen discovery in order to examine Defendant's Senior Vice President, Anna May Kinne, regarding conversations she had with in-house counsel. The ground for this branch of the motion was that Prudential had impliedly waived its attorney work-product privilege by basing its defense in this action on an in-house investigation of the so-called "Jane Doe" claims (claims asserted by a former Prudential employee, involving Plaintiff's alleged retaliation against her, which Prudential contends is the reason why it fired Plaintiff for cause).

On March 23, Judge Smith denied both branches of the motion. The Magistrate Judge acknowledged that production of the attorney-client privileged documents that had been properly listed on the privilege log was not required by the "letter of the court order." Nonetheless, she indicated that, in view of her statements, Prudential's counsel "may have felt some pressure" to produce the documents, which made any waiver of privilege by Prudential less than "full and complete." She therefore refused to compel production of the remaining documents, which were allegedly protected by the attorney work-product privilege. Judge Smith also concluded that "much of the information [in the documents sought by Plaintiff] is information that is available in one way or another from other sources." (All quotations are from Judge Smith's Transcript of Decision and Order, dated March 23, 2000)

Judge Smith also refused to reopen discovery to permit the deposition of Ms. Kinne.

This appeal followed.

In addition, Plaintiff addressed an application to this Court to reopen discovery for the purpose of taking yet more depositions, allegedly necessitated by the belated production of the privileged documents. This application was not previously addressed to Judge Smith.

This Court reverses the March 23 order insofar as it denied the motion to compel production of documents and otherwise affirms the order. The Court denies the motion for leave to reopen discovery.

## REASONS FOR DECISION

Notwithstanding the tremendous deference that District Courts are to give Magistrate's rulings on non-dispositive applications, I have spent considerable time with Judge Smith's ruling concerning the production of allegedly privileged documents. I have done so because I disagree with her conclusion that Prudential's waiver of the attorney-client privilege, by the medium of producing documents whose production had not yet been compelled and might never have been compelled, was not "full and complete."

■ "The attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication over which the privilege is claimed." *United States v. International Brotherhood of Teamsters*, 961 F.Supp. 665, 673 (S.D.N.Y.1997)(quotation omitted). This is a bright-line rule, and it has to be, precisely to forestall the sort of reasoning that Judge Smith was forced to engage in here: an analysis of how "compelled" the person disclosing the documents felt. While Judge Smith had expressed some (understandable)

concern over Prudential's legal arguments, she had reserved decision, which means that she had not made up her mind. Prudential was given an opportunity to brief the issue; it might well have won the day. But it chose not to wait until the pre-selected date when she had indicated that she would rule (a mere ten days from the date the documents were produced); it produced the documents without waiting to be ordered to do so.

· While this Court well understands that lawyers are anxious not to seem obstreperous or unreasonable in front of a judge, there are occasions when they simply must stick to their guns or accept the consequences. Assertion of a privilege is one of those occasions. Where matters of privilege are concerned, counsel must stake their claim and may not abandon it without being forced to do so. Otherwise, courts would routinely have to delve into counsel's psyche—an unworkable result.[1]

█ Prudential acted at its peril when it acted unilaterally rather than waiting for a final ruling. By producing privileged documents concerning its investigation of Jane Doe's claims, it has waived its attorney-client privilege as to all other communications on the same subject. *See In re Kidder Peabody Securities Litigation,* 168 F.R.D. 459, 468 (S.D.N.Y.1996).

█ But that does not dispose of this application. The question then becomes whether Prudential's waiver of the *attorney-client* privilege compels the production of documents that were allegedly withheld on the basis of the *attorney work-product* privilege, which is the basis ·for the remaining documents on the privilege list. It does not. The standards for waiver of attorney-client privilege differ from those applicable to the much broader work-product privilege. "The work-product doctrine is waived when documents are voluntarily shared with an adversary or when a party possessing the documents seeks to selectively present the materials to prove a

point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion." *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.,* 125 F.R.D. 578, 587 (S.D.N.Y.1989). "Generally, the work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *Id.,* at 590; *see also,* 8 Wright, Miller & Marcus, *Federal Practice & Procedure* § 2024 (2d ed.1994). Courts will, consistent with Fed.R.Civ.P. 26(b)(3), preserve the work-product privilege, as they do the attorney client privilege, where disclosure was compelled. However, I have already found that disclosure was not compelled in this instance.

So the issue before the Court is whether there exists some basis for finding a waiver of the separate and independent work-product privilege. Plaintiff argued to Judge Smith that Prudential had produced at least three documents that contained attorney work product—the e-mails to Messrs. Green and Duff and to Messrs. Green and Duff and Mses. Carpenter and Bennett from Maria Latoff, Prudential's in-house counsel. From that, he argued that work-product privilege was waived as to all documents containing work product, analogous to the rule that waiver of the attorney-client privilege as to a particular communication waives as to all communications on the same subject matter. Prudential's counsel urged compelled disclosure and failure of the Plaintiff to establish that any non-privileged material in the undisclosed documents would work an undue hardship.

Judge Smith upheld this assertion of privilege, ruling that the documents presented "significant issues of ... work product protection,"(Tr. at 18), and that "The remaining [i.e., unproduced] documents for which a privilege has been interposed are very narrow in their scope *and do involve portions of the attorney's work that are not otherwise*

---

1. There are, of course, occasions when privileged documents are produced unintentionally, and when accidental production is asserted, a court may be required to inquire into an attorney's state of mind. However, Prudential made a conscious decision to placate the Magistrate Judge by producing the documents rather than waiting for a ruling. The two situations are not at all analogous.

*waived by the remaining documents that have been produced."* (Tr. at 22)(emphasis added.) Judge Smith did not specify the reason for her finding that the disclosure of some work-product documents did not waive the privilege as to other work product. I would guess, therefore, that Judge Smith concluded that the documents contained work product on subjects other than the subject of the work product already disclosed.

■ On its face, the learned Magistrate Judge's conclusion is not erroneous. The rule against selective disclosure of work-products materials, articulated in *Niagara Mohawk* as well as the United States Supreme Court's decision in *United States v. Nobles*, 422 U.S. 225, 239–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), does not rise to the level of "waive work product as to some matters and you've waived as to all." Rather, any waiver of work product by disclosing that work product to one's opponent waives the privilege only as to matter covered in the waived documents. *See Chubb Integrated Systems Ltd., v. National Bank of Washington*, 103 F.R.D. 52, 63 n. 3 (citing cases).

■ Applying that rule, I have reviewed the same documents Judge Smith reviewed. The produced documents (Ex. 7 to the moving papers) are replete with work product. As a matter of fact, one of the produced documents is legended "Privileged and Confidential Attorney Work Product," and goes on to discuss in some detail the lawyer's plan for investigating the Jane Doe claims. Other e-mails produced contain attorney's conclusions about those claims, which is obviously work product, again on the subject of the Jane Doe claims. I am constrained to conclude that the work-product privilege has been waived with respect to matters touching on the Jane Doe claims and the handling of the threatened Jane Doe litigation. Therefore, Prudential has no basis for failing to turn over work product relating to the Jane Doe claims.

Applying the *Nobles/Chubb* rule, for Judge Smith's ruling to be upheld, the withheld work product must not relate to the Jane Doe claims. However, after reviewing the documents I find that, except for a few items that involve the matters in suit before me

(i.e., that directly refer to Plaintiff's termination), all the allegedly privileged documents involve evaluation of the Jane Doe claim (by both in-house and outside counsel), and are, for all practical purposes, part and parcel of the work-product documents that have already been turned over. Therefore, I find Judge Smith's conclusion that the work-product privilege was not waived to be clearly erroneous, except for the following materials: portion of documents PR0001050–51 beginning at the fourth complete paragraph on PR0001050 and continuing to the end of the document; the entire document PR0001062; the highlighted portions of PR0001035; the highlighted portions of PR0001055; and the entire document PR0001056. Those are not work product relating to the Jane Doe matter.

This leaves but one issue as to the documents containing material about the Tompkins investigation (i.e., as to which there has been a waiver of the work-product privilege): whether Judge Smith's finding that the privileged material contained in the withheld document was available from other sources precludes their production under Fed.R.Civ.P. 23(b)(3). It does not. Rule 26(b)(3) ordinarily prohibits the production of attorney work-product, and permits production of what would ‚otherwise be work product only in cases where it would cause undue hardship to obtain the non-privileged material contained therein from non-privileged sources—and then only after the Court protects the work product contained therein. This is precisely the protection that Prudential has waived by its selective production of work-product documents relating to the Jane Doe claims. Issues of undue hardship and protecting the disclosure of an attorney's mental impressions and conclusions become irrelevant when documents disclosing such matters have already been produced.

I next turn to the remaining material in the documents on the privilege list. Plaintiff argues that there has been an implied waiver of both the attorney-client and work-product privileges with respect to those materials (which relate to the subject of Fullerton's termination rather than Jane Doe's claims), because Prudential has affirmatively placed at issue the reason why Plaintiff was "deselected" and terminated. Prudential has indi-

cated that it does not intend to rely on an advice of counsel defense, and therefore urges that this material not be turned over, especially as other, non-privileged materials containing substantially the same information have already been turned over.

This Court is hard-pressed to see how Prudential can assert the defense I understand it to be asserting without turning over these documents (which clearly fall within the attorney-client privilege but are not work product, as they were not prepared in anticipation of litigation). However, as Defendant has indicated that it does not intend to rely on the in-house investigation in which attorney Marie Latoff was integrally involved, or on the conclusions she drew and the advice she gave to other decision-makers at Prudential (all of which is contained in these documents), I cannot say that Judge Smith's determination of no implied waiver is clearly erroneous. I will therefore sustain that aspect of her ruling, provided Prudential submits to this Court, by Friday May 12, a statement signed by counsel explicitly and permanently waiving any reliance on this investigation. If the written waiver is filed, Prudential is advised that this Court, which is now very familiar with the contents of these materials, will carefully scrutinize any motion papers and carefully monitor any trial testimony—striking testimony, if necessary—to insure that Prudential does not try to sneak any reference to this investigation in by the back door.

Except as indicated above, Prudential is directed to produce the unproduced documents listed on its March 13, 2000 privilege list.

The Magistrate Judge's decision not to reopen discovery to permit additional questioning of Ms. Kinne was sound and will not be disturbed by this Court, even in view of my reversal on the document production question.

The other requests for a reopening of discovery, which were addressed in the first instance to this Court, are denied as untimely and because they were not raised with Judge Smith. This case was filed in June 1999 and the discovery cut-off was set at March 1. The fact that Kelly Carpenter conducted the internal investigation and that Marie Latoff was involved were known to Plaintiff two months before the discovery cut-off—indeed, Plaintiff himself could have told his lawyer that Carpenter interviewed him on the very the day when he admitted writing the reference that Prudential contends led to his termination. So it is disingenuous for Plaintiff to contend that he only recently discovered "the extent" of Carpenter's and Latoff's involvement. Knowing that they were involved at all obligated Plaintiff to explore their roles on a timely basis.

This Court warns counsel at the beginning of every case that discovery deadlines are firm and admonishes them not to wait until the last minute to propound interrogatories, notice depositions and apply to the Magistrate Judge for rulings. Plaintiff's counsel have many matters before this Court and are familiar with my rules and my predilections in these matters.

This constitutes the decision and order of the Court.