MEDINOL, LTD., Plaintiff,

v.

BOSTON SCIENTIFIC CORPORATION, Peter M. Nicholas, Michael Berman, Lawrence C. Best, James M. Corbett, Janet M. Kelley, Paul A. Laviolette, Stephen R. Paidosh, Arthur L. Rosenthal, Paul W. Sandman, Defendants.

No. 01 Civ. 2881(AKH).

United States District Court, S.D. New York.

Oct. 28, 2002.

Keith Richard Hummel, Rory O. Millson, Elizabeth L. Grayer, Cravath, Swaine & Moore, New York City, for Medinol, Ltd., Judith Richter, Jacob R. Richter and Nasr Salman.

Peter J. MacDonald, Johanna M. Toth, Hale and Dorr, LLP, New York City, for Boston Scientific Corp.

Robert B. Fiske, Jr., Davis Polk & Wardwell, John P. Cooney, Jr., New York City, for Peter M. Nicholas.

Samuel W. Seymour, Richard H. Klapper, Jeffrey J. Chapman, Sullivan & Cromwell, New York City, for Lawrence C. Best.

### *OPINION AND ORDER DENYING MOTION TO RECONSIDER*

HELLERSTEIN, District Judge.

Defendant's motion for reconsideration of my order of June 4, 2002, ordering production of the minutes of meetings of the Special Litigation Committee of Boston Scientific Corporation, is denied. I have again reviewed counsels' arguments and briefs, and I adhere to my decision.

## I. *Background*

### A. *Facts*

Plaintiff, Medinol, Ltd., is an Israeli company engaged in biotechnology. It alleges that it developed a stent for heart and arterial implants and licensed distribution rights and limited back-up manufacturing rights to Boston Scientific Corporation ("Boston Scientific" or "BSC"). Medinol claims that Boston Scientific abused its position as licensee to create its own, secret alternative sources of supply, and filed this suit against Boston Scientific to obtain equitable and legal relief. The parties have since been engaged in extensive discovery proceedings.

It appears that certain practices of Boston Scientific and its executives with regard to the stent caused its directors to terminate a number of high-ranking employees, to engage counsel to perform an investigation, and to report about that investigation and its results to a Special Litigation Committee of the Board. Minutes were taken of a meeting, or meetings, of the Committee, and shown to the Company's outside public accountants, Ernst & Young, in connection with their audit of the Company's litigation exposures. The issue that I decided, and which I am now asked to reconsider, is whether the sharing of such information, developed by the Company's counsel and shared with accountants, waives privilege.

### B. *Boston Scientific's Arguments*

Boston Scientific urges this Court to find that the minutes of the meetings of the Special Litigation Committee, even if not protected by the attorney-client privilege, remain protected by the work product privilege. Its argument, essentially, is that work product protection is not necessarily waived by disclosure to third parties, as long as a confidential relationship exists with those parties, and there is no appreciable risk that the work product will be given to others. BSC claims that such a relationship exists with respect to outside auditors and quotes my own previous writings for that proposition. *See* Alvin K. Hellerstein, *A Comprehensive Survey of the Attorney–Client Privilege and the Work Product Doc-*

*trine,* 540 PLI/Lit 589, \*780–\*781, 1995 Revision (1996) (reporting holdings in scattered cases that disclosure to accountants does not waive the work product privilege). While in some cases disclosure to accountants does not waive the protections of the work product doctrine, there is a difference between disclosure to accountants who have been retained by a lawyer to understand technical aspects of a case and whose interests are therefore allied with the client, and outside auditors who, in order to be effective, must have interests that are independent of and not always aligned with those of the company.

## II. *The Work Product Doctrine*

The work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir.1998) (quoting *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947)). Unlike the attorney-client privilege, where the rules of waiver are rather well defined and where privilege is lost if a privileged item is shared with a third party, *In re Visa Check/Mastermoney Antitrust Litig.,* 190 F.R.D. 309, 314 (E.D.N.Y.2000), work product protection is not necessarily waived by disclosures to third persons. *In re Pfizer Inc. Sec. Litig.,* No. 90 Civ. 1260(SS), 1993 U.S. Dist. LEXIS 18215, at \*20, 1993 WL 561125, at \*6 (S.D.N.Y. Dec. 23, 1993) (Buchwald, N., U.S.M.J.); *see In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir. 1982). In this sense, the work product doctrine may be subject to considerations different from those generally applicable to the attorney-client privilege. *In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir.2000) (recognizing that the work-product doctrine is distinct from and, in some instances, broader than the attorney-client privilege); *see also United States v. Nobles,* 422 U.S. 225, 238 n. 11, 239–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (finding waiver). There are relatively few cases that deal with the issue of waiver in the context of the work product doctrine; too few, perhaps, to mark

out the parameters when a breach of confidentiality will cause a loss of privilege.

■ However, it is clear that disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work product doctrine. *Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94 ("[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."); *In re Copper Market*, 200 F.R.D. at 221 n. 6; *In re Pfizer*, 1993 U.S. Dist. LEXIS, at *21, 1993 WL 561125, at *6. Indeed, the cases in this area of law recognize that, consistent with the policies that give rise to the work product privilege, *see Hickman*, 329 U.S. at 511, 67 S.Ct. at 393–94, work product developed in one case may be used in another by the same party or another allied in interest without loss of the privilege. *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C.1974) ("The sharing of information between counsel for parties having common interests does not destroy the work product privilege, during the course of the litigation."); *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572, 578 (S.D.N.Y.1960). Such use of work product serves the parties' litigation interests and does not "substantially increase[ ] the opportunity for potential adversaries to obtain information." *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 n. 6 (S.D.N.Y. 2001); *In re Grand Jury*, 561 F.Supp. 1247, 1257 (E.D.N.Y.1982). The policy of sharing applies equally where an attorney engages the help of an accountant to assist with some aspect of litigation, for the accountant is·assisting the lawyer in developing a litigation objective and is thus enhancing the work product. *See United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961) (ruling that accountant employed by tax law firm to assist firm in understanding client's conversations does not waive privilege because accountant considered equivalent to a translator); *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989). However, where the third party to whom the disclosure is made is not allied in interest with the disclosing party or does not have litigation objectives in common, the protection of the doctrine will be waived. *See, e.g., Verschoth v. Time Warner*, No. 00 Civ. 1339(AGS), 2001 U.S. Dist. LEXIS 6693, at *14, 2001 WL 546630, at *4 (S.D.N.Y. May 22, 2001) (ruling that work product privilege was waived where defendant showed work product to a third party whose "interests may not have been aligned" with those of defendant).

### III. Disclosure to Independent Auditors

■ The question here, then, is whether Boston Scientific's disclosure of the meeting minutes of the Special Litigation Committee to Ernst & Young waives the protection of the work product doctrine. I hold that it does.

In order to comply with various provisions of the federal securities laws requiring publicly-held corporations to file their financial statements with the Securities and Exchange Commission, *see* Securities and Exchange Act of 1934, 15 U.S.C. §§ 78m(a)(2), 78m(b) (2002); 17 C.F.R. § 249.310 (2002), a company must open its books and records to an independent auditor for review. The independent auditor is required to express an opinion, based on a review according to generally accepted auditing standards, *see* 1 AICPA, Statement on Auditing Standards § 110.01 (1972), that the financial records of the corporation have been prepared in accordance with accounting principles and fairly reflect the ·condition of the corporation, results of operations, and related other matters as of certain reporting dates. The auditor, in that connection, and among other tasks, will be required to evaluate the adequacy and reasonableness of the corporation's reserve accounts and in that capacity will generally receive and evaluate disclosures made by the company's counsel concerning the company's litigation exposures.

Customarily, Management asks counsel who represent it in its lawsuits to make the relevant disclosures to the auditor and express opinions about exposures and probable outcomes. Counsel vary in how they respond to such inquiries, and some will show aspects of their work product to auditors to support the reasonableness of Management's

reserves.[1] The independent auditor, however, must come to his own understanding of reasonableness, based on the evidence. The auditor's review supports the auditor's independent opinion about the fairness of the company's financial reports, not the audited company's litigation interests. Thus, the auditor's interests are not necessarily aligned with the interests of the company. And, as has become crystal clear in the face of the many accounting scandals that have arisen as of late, in order for auditors to properly do their job, they *must* not share common interests with the company they audit. "[G]ood auditing requires adversarial tension between the auditor and the client." Roberta S. Karmel, *A New Watchdog for Public Accountants*, N.Y. Law J., Aug. 15, 2002, at 3. As the Supreme Court has explained:

> By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to the investing public. This "public watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.

*United States v. Arthur Young & Co.*, 465 U.S. 805, 817–18, 104 S.Ct. 1495, 1503, 79 L.Ed.2d 826 (1984) (emphasis in original).

Here, Ernst & Young reviewed the minutes of the meetings of Boston Scientific's Special Litigation Committee in connection with its role as outside auditor. As the outside auditor, Ernst & Young's interests were not necessarily united with those of Boston Scientific; they were independent of them. Moreover, the sharing by Boston Sci-

entific's lawyers of selected aspects of their work product, although perhaps not substantially increasing the risk that such work product would reach potential adversaries, see *Verschoth*, 2001 LEXIS 6693, at *14, 2001 WL 546630, at *3, did not serve any litigation interest, either its own or that of Ernst & Young, or any other policy underlying the work product doctrine. *See Hickman*, 329 U.S. at 510–12, 67 S.Ct. at 393–94. *Compare United States v. Kovel,* 296 F.2d 918 (2d Cir.1961), where an accountant was hired to help the attorney understand his client's complicated tax strategies for use in litigation, thus preserving privilege, *with Eglin Fed. Credit Union v. Cantor, Fitzgerald Sec. Corp.*, 91 F.R.D. 414 (N.D.Ga.1981), where disclosures of board minutes to accountants for audit purposes caused a loss of privilege.

In *United States v. Kovel,* disclosure to the accountant served a litigation purpose and the privacy interest protecting the adversary relationship inhered. 296 F.2d at 922,[2] Similarly, in *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285 (D.C.Cir.1980), sharing of work product by plaintiff with third-party intervenors did not result in a loss of privilege because they shared a "common interest[ ]" and a "common adversary" in the antitrust suits they had each filed. *Id.* at 1299. The purpose of disclosure was in aid of litigation, and a refusal to protect the information shared would intrude upon the lawyer's "essential zone of privacy," *In re Grand Jury*, 219 F.3d at 190, in furthering the litigation interests of the corporation for whose benefit the work product had been created.

That is not the case in the instant suit. While Boston Scientific held meetings of its Special Litigation Committee with an eye to litigation, the disclosures to the independent auditor had no such purpose. Boston Scien-

---

1. The American Bar Association has promulgated standards that generally authorize opinions to be expressed only where outcomes are reasonably certain. See Report, Subcomm. on Law and Accounting, Am. Bar Ass'n, *Inquiry of a Client's Lawyer Concerning Litigation, Claims, and Assessments: Auditing Interpretation AU Section 337*, 45 Bus. Law. 2245 (1990). Actual practice has moved away to some degree from these restraints.

2. Although *Kovel* and similar cases discussed the attorney-client privilege, the privileged activities were not communications between client and lawyer, but rather the gathering of information by a lawyer incident to litigation, the classic area of work product.

tific and its outside auditor Ernst & Young did not share "common interests" in litigation, and disclosures to Ernst & Young as independent auditors did not therefore serve the privacy interests that the work product doctrine was intended to protect.[3]

Accordingly, the minutes and allied materials of Boston Scientific's Special Litigation Committee that were disclosed to Ernst & Young are not protected by the work product doctrine and must be produced. Boston Scientific shall produce all such documents, within 20 days from now, by November 13, 2002.

SO ORDERED.

3. For these reasons, I depart from Judge Buchwald's decision in *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 U.S. Dist. LEXIS 18215, 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993), holding that Pfizer's disclosure of work product to its outside auditors did not waive privilege.