**RICOH COMPANY, LTD., Plaintiff,**

v.

**AEROFLEX INCORPORATED,** Ami Semiconductor, Inc., Matrox Electronic Systems, Ltd., Matrox Graphics Inc., Matrox International Corp., and Matrox Tech, Inc., Defendants.

No. M8–85(CM).

United States District Court,
S.D. New York.

Dec. 2, 2003.

**MEMORANDUM DECISION AND OR-
DER DENYING DEFENDANTS'
MOTION AND NON–PARTY SY-
NOPSYS'S MOTION TO QUASH
SUBPOENA**

MCMAHON, District Judge.

The present motion to quash is before this Court on the miscellaneous docket, and

arises in the context of a patent infringement action between plaintiff Ricoh Company and defendants Aeroflex Inc., AMI Semiconductor, Inc., Matrox Electronic Systems, Ltd., Matrox Graphics, Inc., Matrox International Corporation, and Matrox Tech, Inc. (collectively "Defendants") which is currently before the District Court for the Northern District of California. Non-party Synopsys is the plaintiff in a related action in the Northern District of California, seeking a declaratory judgment of invalidity and non-infringement regarding the same patent, and has joined this motion to quash. Defendants and Synopsys are represented by the same counsel.

Defendants and Synopsys seek an order quashing so much of a third-party subpoena served by Plaintiff on IBM that seeks information regarding communications between IBM and Defendants. Movants assert that those communications are privileged.

For the reasons that follow, the motion is denied.

**Background**

In January 2003 Ricoh sued defendants—designers and manufacturers of computer chips—in the District of Delaware for patent infringement, alleging that those defendants were using the steps recited in the process claims of Ricoh's U.S. Patent No. 4,977,432 ("the 432 patent"). The 432 patent describes a technical process used in designing and manufacturing certain types of computer chips. Each of the Defendants was a user of logic synthesis systems sold by Synopsys, Inc.

In response to Ricoh's suit, Synopsys brought an action against Ricoh in the Northern District of California seeking a declaratory judgment of the invalidity and non-infringement of the 432 patent. On August 29, 2003, the Delaware District Court transferred Ricoh's action to the Northern District of California, reasoning that the manufacturer's action, while later-filed, takes precedence over a suit against the principal infringer's customers. *Ricoh Co. v. Aeroflex Inc., et al.,* 279 F.Supp.2d 554, 557–558 (D.Del.2003).

Discovery in this case has been ongoing since May 2003. As part of their initial investigation, counsel for Defendants and Synopsys, the law firm of Howrey Simon Arnold and White ("Howrey Simon"), contacted individuals employed by IBM to obtain information about work done in the 1980s on logic synthesis systems.[1] Between June 6 and July 10, 2003, Raul Camposano (a Synopsys employee), John Darringer (an IBM employee), and Louis Campbell (counsel for Defendants and Synopsys) exchanged e-mails regarding information relevant to Defendants' defense in the patent infringement action. Thirteen e-mails exchanged between these individuals are at issue in this motion.

Defendants' subpoena requests documents and information relating to IBMs prior art and Rule 30(b)(6) depositions. According to Defendants, Attorney Campbell posed "specific technical questions" about the prior art to IBM employees before issuing the subpoena on August 13, 2003. Attached to the subpoena were several pieces of prior art referenced in the subpoena, as well as an e-mail sent from Darringer to Campbell. The e-mail, which was listed on Defendants' privilege log, describes certain documents which Mr. Darringer believed would be helpful to Defendants' investigation.

On or about September 9, 2003, Ricoh sent IBM a subpoena ("Plaintiff's Subpoena") identical to the one Defendants' had previously served, except that it included requests for: "17) All documents that ... relate to any communication between defendants and IBM since January 30, 2003"; "18) All documents that ... relate to any communication between Synopsys and IBM since January 30, 2003"; and "19) All documents that ... relate to any communication between Howrey Simon and IBM since January 30, 2003." (Def. Mem. In Opp., Ex. 2).[2] The subpoena also added a Rule 30(b)(6) deposition topic

---

1. Defendants describe logic synthesis systems as "software programs that take architectural descriptions of hardware written in a high-level description language and construct from this description a netlist of logic cells that more closely reflects the specific structure of an integrated circuit." (Def. Mem. of Law at 1).

2. Howrey Simon is the law firm representing Defendants and Synopsys.

covering "communications between IBM and Synopsys, Howrey and defendants ... relating to the patent at issue and certain methodologies." (Id.)

Defendants objected to the subpoena to both Ricoh and IBM, claiming that the subpoena called for documents protected by the work product doctrine. The parties agreed that Requests 17–19 would be limited to "external communications" between IBM employees on the one hand and Defendants, Synopsys or Howrey Simon on the other. This agreement did not, however, resolve the dispute, and the instant motion to quash was filed on October 10, 2003.

### Discussion

■ Defendants and Synopsys move to quash Document Requests Nos. 17–19 and Deposition Topic No. 9 of Plaintiff's Subpoena on the grounds that the information called for is protected by the attorney work product doctrine. The party asserting the privilege must establish the essential elements of the privilege. U.S. v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir.1996). In order for Defendants to assert privilege under the attorney work product doctrine, they must be able to show that the documents were prepared (1) "in anticipation of litigation" (2) by a party or its representative and (3) not in the ordinary course of business. Fed.R.Civ.P. 26(b)(3); Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Service-center of Haverstraw, Inc., No. 02 Civ. 0504, 2003 WL 22110281 at *4 (S.D.N.Y. Sep 10, 2003); von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir.1987). A movant's failure to satisfy any one of those three criteria dooms the motion.

### Are the Documents at Issue Privileged?

■ The work product doctrine first articulated by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and later codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, is intended to protect materials prepared in anticipation of litigation by or for a party or his representative. Although this doctrine has been recognized as being broader than the attorney-client privilege, it is not without bounds. Fullerton v. Prudential Ins. Co., 194 F.R.D. 100, 103 (S.D.N.Y.2000).

Based on a review of the privilege log, the documents to whose production movants object are best grouped into three categories and considered separately.[3]

■ The Category One documents (Nos. 1–3 on the privilege log) are e-mails exchanged between Raul Camposano, a Synopsys employee, and John Darringer, an IBM employee. These e-mails are outside the scope of the attorney work product privilege. The privilege extends only to documents prepared in anticipation of litigation by or for another party to the litigation or his representative. F.R.C.P. 26(b)(3). Communications between two non-parties to a litigation, neither of whom is a "representative" of a litigating party, do not fall within the scope of the attorney work product.

Movants suggest that the privilege attaches because the e-mail exchange "was initiated at the request of [defendants' and Synopsys'] shared counsel." (Br. at 3). The argument, I gather, is that because Howrey Simon asked the employee of its client Synopsys—which is not a party to this action—to initiate an e-mail exchange with a witness who is also not a party to this action, the e-mails exchanged by the two non-parties magically fall within the work product privilege. This, I assume, is defendants' way of trying to circumvent the rule that a non-party witness is not entitled to assert the work product privilege.[4]

The argument—which is strained at best—works only if I conclude that, because defendant and Synopsys share counsel in separate (if related) lawsuits, they are both "parties" to this lawsuit for work product privilege purposes. In support of that unstated proposition, movants point to the decisions by the

---

3. The Court has not been provided copies of the disputed documents and this opinion is based solely on the parties' papers and a review of the privilege log attached to Louis Campbell's declaration as Ex. B.

4. This proposition is not exactly on point, but it suggests that Synopsys' position as a third party who is NOT a witness is even less tenable.

District of Delaware and the Northern District of California, denying Ricoh's motion to transfer the declaratory judgment action to Delaware, *Synposys, Inc. v. Ricoh, Inc.*, No C 03–2289(MJJ)(N.D.Ca. Sept. 22, 2003) and transferring the Delaware action to San Francisco, *Ricoh,* 279 F.Supp.2d at 555–558.

The best argument I can muster in support of movants' position (and I am constrained to note that movants themselves do not explicitly make it) is that Judge Jenkins in the Northern District of California, in denying Ricoh's motion to dismiss the declaratory judgment action, stated, "The Court finds that defendant's claims against plaintiff's customers are necessarily allegations against the primary use of the Design Compiler itself. Therefore, Plaintiff's actions in manufacturing and selling the product is [sic] sufficient to satisfy the case or controversy requirement." The argument appears to be that the plaintiff in the declaratory judgment action and the defendants share an identity of interests; that the Category One e-mails were generated in response to a request for information made by the lawyer for one of the two parties to the exchange (Synposys, the plaintiff in the declaratory judgment action), who also happens to be the lawyer for defendants in this action, which in effect makes Synopsis a party to this action, thereby converting communications involving its employees into work product if those communications were made at the behest of the attorney. This is what a law professor would call bootstrapping.[5] Synposys (the employer of Camposano, who initiated the e-mail exchange) is not a party to this action. IBM (the employer of Darringer, the other party to the e-mails) is not a party to this action. That means work product privilege does not attach.

If there were any evidence in the record that the action commenced by Synopsys and the instant action had been consolidated, I might feel differently, but no one has suggested to me that they were—and consolidation would so clearly be germane to the question under consideration that I must infer that the actions have not been consolidated, or someone would have told me about it.

█ The Category Two documents (Nos. 6, 10, 11, 13 on the privilege log) are e-mails that were sent by Darringer (of IBM) to Defendants' counsel, Attorney Campbell. As I noted in *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, No. 00 Civ. 8660, 2003 WL 22358852 at *5 (S.D.N.Y. Oct.7, 2003), it is a stretch to apply the attorney work product privilege to documents created by a third party and then sent to counsel for a party. In *Catskill,* however, the parties had expressly agreed that such communications were covered by the privilege. Here, no such agreement exists. Nor is there any confidential relationship between the sender (IBM) and the recipient (lawyers for Defendants and Synopsys), as would be the case where the "third party" is a consultant retained by a party or its lawyer and brought within the privilege as an agent of the attorney or party. *See E.C.D.C. Envt'l, L.C. v. New York Marine & General Ins. Co.*, No. 96 Civ. 6033, 1998 WL 614478, 1998 U.S. Dist. LEXIS 8808 (S.D.N.Y.1998) (disclosure of work product to outside contractors did not waive protection where contractors were either related companies to plaintiff or acted as agent for plaintiff in the litigation); *Garrett v. Metropolitan Life Ins. Co., et al.*, No. 95 Civ. 2406, 1996 WL 325725, 1996 U.S. Dist. LEXIS 8054 (S.D.N.Y. June 11, 1996) (outside consulting firm was acting as agent of defendant's attorney when consultant's reports were generated under the direction and control of defense counsel).

Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit. *See Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478, 2002 WL 1402055, 2002 U.S. Dist. LEXIS 11728 (S.D.N.Y. June 26, 2002) (collecting cases); *Polycast Tech. v. Uniroyal,* No. 87 Civ. 3297, 1990 U.S. Dist. LEXIS 12444 (S.D.N.Y. Sept. 20, 1990) ("The

---

5. In a footnote Judge Jenkins referred to Synposys' duty to indemnify its customer. No indemnity agreement has been proffered, and indemnity is not discussed in any of the briefs submitted to me, so I will not go there.

work product rule has no application to a document prepared by and in the hands of a third person who is neither a party to nor interested in the action."). Here, IBM—the non-party witness whose documents have been subpoenaed—is neither a party to this action nor does it have any interest in the action. IBM is not even a party to the related litigation—Synopsys is, but its documents have not been subpoenaed. Nor was IBM retained as a consultant. Therefore, IBM's copies of these e-mails are not covered by the work product privilege.

■ The Category Three documents include e-mails sent by Attorney Campbell to Mr. Darringer (of IBM), one of which was copied to Mr. Matt Hocker (entries 4, 5, 7–9 and 12). Each of these documents is described on the privilege log as "e-mail communication from attorney to percipient third-party witness seeking information related to defense of patent invalidity to Plaintiff's allegation of patent infringement." (Campbell Aff., Ex. B). Defendants argue that these e-mails are privileged because they were sent by counsel in furtherance of an investigation of an affirmative defense in the present lawsuit, and fall squarely within the protection of the work product doctrine. (Def. Reply Mem. at 2).

The work product doctrine was intended to "preserve a zone of privacy in which a lawyer can prepare and develop legal strategies with an eye toward litigation, free from unnecessary intrusions by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998) (quoting *Hickman*, 329 U.S. at 510–511, 67 S.Ct. 385). To the extent that the e-mails reflect counsel's strategy for establishing an affirmative defense as Defendants claim, they would constitute protected attorney work product. I have no way of knowing whether the e-mails contain work product, since no one has seen fit to send them to me for inspection.

However, the point is moot, since Mr. Campbell waived the privilege by sharing his views or questions with Darringer, an employee of a non-party witness.

*Was the Privilege Waived?*

■ Unlike communications protected by the attorney-client privilege, immunity afforded by the work product doctrine is not automatically waived by disclosure to a third-party. *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 114 (S.D.N.Y.2002). However, "common sense and the practicalities of litigation define the limits of the work product doctrine." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993).

In this case, the practicalities of litigation suggest that Defendants waived protection for these e-mails under the work product doctrine when counsel shared his observations with a third-party who was likely to be an independent witness in the case.[6] "Generally, the work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *Fullerton*, 194 F.R.D. at 103 (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.*, 125 F.R.D. 578, 587 (S.D.N.Y.1989)). Nothing in the record before me suggests that IBM and the Defendants share a common interest, such that the Defendants could reasonably expect that information revealed to IBM would not be disclosed to their adversary. Therefore, sharing this information with IBM, Defendants have waived the protection afforded by the work product doctrine. *See Medinol*, 214 F.R.D. at 115 ("where the third party to whom the disclosure is made is not allied in interest with the disclosing party or does not have litigation objectives in common, the protection of the doctrine will be waived").

Defendants suggest that they made it clear to IBM that the communications were confi-

6. Plaintiff also argues that Defendants waived privilege by attaching a copy of an e-mail from Darringer to Campbell (which had been identified as privileged on Defendants' log) to the subpoena which was served on IBM and Plaintiff. Defendants claim this document—which is plainly not privileged—was mistakenly included on the log and cannot be relied upon to show a subject matter waiver. I credit Defendants' explanation, and decline to find a waiver on that ground.

dential. But in the context of a patent litigation, where prior art will be highly relevant both to the party asserting the infringement and the party defending the suit, Defendants could not reasonably expect their communications to remain confidential. Otherwise all manner of information in the hands of disinterested third parties could be immunized from discovery; counsel for one side to a lawsuit might even have an incentive to get arguably privileged information into the hands of a significant third party so as to limit an opponent's discovery on a critical issue.

Therefore, the Category Three e-mails from Campbell to Darringer must be produced by IBM.

For the same reasons as outlined above, Plaintiff is entitled to inquire about the communications between the Defendants, Synopsys and IBM in the deposition of Mr. Darringer.

### Conclusion

Defendants Motion to Quash Document Requests No. 17–19 and Deposition Topic No. 9 of Plaintiff's subpoena for production of documents and deposition testimony served on IBM Corporation is denied.

This constitutes the decision and order of the Court.