**INFORMATION RESOURCES, INC., Plaintiff,**

v.

**The DUN & BRADSTREET CORPORATION, A.C. Nielsen Co. and IMS International, Inc., Defendants.**

**No. 96 Civ. 5716(LLS).**

United States District Court, S.D. New York.

April 14, 1998.

Freeborn & Peters, Chicago, IL, for Plaintiff; Brian P. Norton, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New Yor, NY, for Defendants; Aidan Synnott, of counsel.

**OPINION and ORDER**

STANTON, District Judge.

Plaintiff asserts attorney work-product protection for its submissions to various governmental agencies (the United States Department of Justice, Antitrust Division, the Canadian Competition Tribunal and the European Commission) in its efforts to foster action by those antitrust authorities against the defendants in this private treble-damage lawsuit.

Assuming the materials were attorney work-product, the protection was waived.

While the decisions in the law involving waiver by production to governmental authorities with an expectation they will not be revealed to the producing party's adversary are fact-intensive and not entirely consistent, they fall roughly into three categories.

1.

Cases in the first category find no waiver in production of the work-product to an existing ally in litigation, applying the concept of the "joint defense" privilege articulated in *Stix Products, Inc. v. United Merchants & Mfrs., Inc.,* 47 F.R.D. 334 (S.D.N.Y.1969) (no waiver by customer's disclosure of its legal opinion on patent to plaintiff charged with its infringement, in view of plaintiff's and customer's common interest); *Stanley Works v. Haeger Potteries, Inc.,* 35 F.R.D. 551, 555 (D.Ill.1964) (exchange by "attorneys for parties having a mutual interest in litigation" remains protected); *Transmirra Prods. Corp. v. Monsanto Chem. Co.,* 26 F.R.D. 572 (S.D.N.Y.1960) (same, collecting cases).

The principle applies between private parties and the government. *See, e.g., Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464 (11th Cir.1984) (transfer from attorneys for private plaintiff to attorneys for EEOC, while both engaged in preparation of a joint trial).

Thus in *U.S. v. A.T. & T. Co.,* 642 F.2d 1285, 1299–1300 (D.C.Cir.1980), which found no waiver in MCI's attorneys sharing legal analyses and materials with the government

attorneys prosecuting separate but parallel claims against the same defendant, the court stated:

> The existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege. But "common interests" should not be construed as narrowly limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary. When the transfer to a party with such common interests is conducted under a guarantee of confidentiality, the case against waiver is even stronger.

In *A.T. & T.* (642 F.2d at 1300) the Court of Appeals approved the observations of Special Masters that

> The exchange seems to us to partake of a consultation on tactics and strategy, the very things the work product privilege is designed to protect.

—and went on to say:

> We believe our holding on the waiver issue furthers the purpose of the work product privilege by protecting attorneys' preparations for trial and encouraging the fullest preparation without fear of access by adversaries. *The work product privilege rests on the belief that such promotion of adversary preparation ultimately furthers the truth-finding process.* For MCI to contribute the fruit of its analysis to the Government on those issues common to their two cases will further the Government's preparation for trial and eliminate some duplication of effort. [Emphasis in original.]

### 2.

In the second category, courts have sometimes found no waiver when the documents were submitted under some coercion to a governmental authority which was not expected to reveal the material to the producing party's adversary. *See, e.g., GAF Corp. v. Eastman Kodak Co.,* 85 F.R.D. 46, 51–52 (S.D.N.Y.1979) (compliance with Civil Investigative Demand (which might have been opposed on the ground of privilege) is not waiver; Antitrust Civil Process Act bars government from revealing it to Kodak without GAF's consent; court stated it was applying majority rule); *Reinfeld v. Riklis,* 1991 WL 41659 (S.D.N.Y. Mar.21, 1991) (work-product protection not waived by production to British governmental investigators on the understanding[1] that disclosure would be made only to enable "the Inspectors to carry out their official governmental inquiry" and that the privilege would be preserved) (citing *GAF*).

Such protection is by no means universal. For example, in *Westinghouse Electric Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1427–31 (3d Cir.1991), the Court of Appeals for the Third Circuit refused work-product protection to documents Westinghouse submitted to the Securities and Exchange Commission and to the Department of Justice in connection with their investigations into its activities, holding that disclosure to an adversary waived the protection of the work-product doctrine as against other adversaries. *See also In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir.1993) (party offering memorandum to SEC in attempt to prevent enforcement proceedings cannot pick and choose, and has waived work-product protection as against all adversaries):

> ... the Supreme Court has rejected attempts to use "the work-product doctrine to sustain a unilateral testimonial use of work-product materials...." *Nobles,* 422 U.S. at 239–40, 95 S.Ct. at 2170–71. We have previously denied a claim of privilege after a claimant decided to selectively disclose confidential materials in order to achieve other beneficial purposes. *In re John Doe Corp.,* 675 F.2d at 489. Similarly, we now reject Steinhardt's attempt to

---

[1]. These facts underlying the decision reported in WestLaw are contained in the Magistrate Judge's endorsement and December 6, 1990 letter from Arnold & Porter, Esqs. to the court.

use the doctrine to sustain the unilateral use of a memorandum containing counsel's legal theories voluntarily submitted·to an investigatory body.

The D.C. Circuit rejected the selective waiver theory, in part based on the perception that the selective waiver doctrine allows a party to manipulate use of the privilege through selective assertion. *Permian Corp. v. United States,* 665 F.2d 1214, 1221 (D.C.Cir.1981). We agree that selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage. The *Permian* court noted that the basis for the attorney-client privilege is that frank communication between attorney and client will be fostered by confidentiality, and that the "privilege ceases when the client does not appear to have been desirous of secrecy.... Voluntary cooperation with government investigations may be a laudable activity, but it is hard to understand how such conduct improves the attorney-client relationship." *Id.* at 1220–21. "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Id.* at 1221. Although *Permian* was limited to a discussion of the attorney-client privilege, the D.C. and Third Circuits applied similar reasoning to work product in *In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982), and *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414 (3d Cir. 1991), respectively.

### 3.

The present case falls clearly into a third category, in which waiver results from the voluntary submission of material to a government agency to incite it to attack the informant's adversary. As stated in *Three Crown Ltd. Partnership v. Salomon Bros., Inc.,* 1993 WL 277182, at *2 (S.D.N.Y. Jul.21, 1993):

A well-travelled route to achieving relief in civil litigation has been to persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation against that party. The party who travels that route should not be protected from disclosure of its statements. Accordingly, absent the government's intervening in the proceeding to protect the secrecy of the grand jury proceedings or of its investigations, the Court will allow liberal discovery of statements made or documents submitted to a governmental agency prior to the initiation of an investigation of any defendant in this litigation concerning the subject matter of this litigation. [Footnotes omitted.]

In *Three Crown,* the asserted protection was governmental investigative privilege rather than the work-product doctrine, but there is no indication that difference affected the outcome. Indeed, in *D'Ippolito v. Cities Serv. Co.,* 39 F.R.D. 610 (S.D.N.Y.1965), the court unhesitatingly held that any work-product protection was destroyed by the voluntary disclosure to the Antitrust Division, which was not a party to the lawsuit.

In the present case, the plaintiff and the government authorities were neither adversaries nor allies when the documents were submitted. As in many such cases, plaintiff sought to persuade uncommitted agencies to initiate actions which would disadvantage its competitor and perhaps provide plaintiff with the advantages of collateral estoppel from a governmentally-litigated favorable judgment, or at least useful evidence from a governmental authority's investigation. This case falls easily into the third category, in which protection is waived for materials submitted voluntarily to stimulate beneficial official action. This vindicates the principle of full disclosure, prevents the unfairness of selective revelations, and reflects the common-sense perception that in most such cases the privacy attending creation of the work-product had either served its purpose or was of little importance in the first place.

*Conclusion*

The work-product objection is overruled.

So ordered.