BANK OF AMERICA, N.A. and Palladium Insurance Limited, Plaintiffs,

v.

TERRA NOVA INSURANCE COMPANY, Defendant.

No. 01 Civ. 646(LMM)(GWG).

United States District Court, S.D. New York.

Dec. 19, 2002.

Joseph De Simone, Mayer, Brown, Rowe
& Maw, New York City, for Plaintiff Bank of
America, N.A.

John M. Aerni, LeBoeuf, Lamb, Greene &
MacRae, L.L.P., New York City, for Defendant Terra Nova Insurance Company.

John D. Gordan, III, Morgan, Lewis &
Bockius LLP, New York City, for Non–Party
Elliston.

*OPINION AND ORDER*

GORENSTEIN, United States Magistrate
Judge.

Plaintiffs Bank of America, N.A. and Palladium Insurance Limited move to compel defendant Terra Nova Insurance Company to
produce certain documents created by its
agent—a company known simply as "Elliston." This Court previously ruled that
these documents constituted attorney work
product. *See* Order, dated June 13, 2002
(Docket # 19). The plaintiffs now contend
that the work product protection was waived
because the substance of these documents
and some of the documents themselves were
disclosed to governmental law enforcement
agencies. Plaintiffs seek production of the
documents and leave to re-take the deposition of a witness from Elliston.

Terra Nova and Elliston oppose Bank of
America's motion. For the reasons stated
below, the Court deems the work product
protection to be waived and thus the motion
to compel is granted.

## I. *BACKGROUND*

### A. *The Alleged Fraud by Harold Mollin*

The facts underlying this action and some
related actions are reflected in prior opinions
of the Court, familiarity with which is as-

sumed. *See Bank of America, N.A. v. Terra Nova Ins. Co. Ltd.*, 211 F.Supp.2d 493 (S.D.N.Y.2002); *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80 (S.D.N.Y.2002). In brief, Palladium entered into a number of weather derivative contracts in 1999 whereby Palladium accepted weather-related risks throughout the United States. Bank of America extended letters of credit in connection with these contracts. Palladium entered into reinsurance contracts with Terra Nova, amongst others, to provide security in connection with the letters of credit extended by Bank of America. Under the reinsurance contracts, Terra Nova was required to indemnify Palladium and Bank of America for any payments made on the underlying weather derivative contracts.

Eventually payments were required to be made to third parties on the weather derivative contracts. The dispute in this case centers on the authority of an insurance agent, Harold Mollin of Customized Worldwide Weather, Inc. ("CWW"), to issue the reinsurance contracts. Terra Nova alleges that Mollin acted without authority—either actual or apparent—and the reinsurance contracts are therefore invalid. Bank of America and Palladium assert that Mollin at a minimum had apparent authority to bind Terra Nova and that it must therefore pay on the reinsurance contracts.

When Terra Nova first learned in March 2000 that Mollin had collected premiums and issued insurance without authority, its counsel retained Elliston, an insurance consulting company, to conduct an investigation of CWW with respect to eleven specific transactions that caused approximately five million dollars in losses to Terra Nova. During the course of its investigation, Elliston, including its president Michael Holland, interviewed Mollin a number of times and reviewed a large number of documents at CWW. During these meetings, Mollin confessed that he had entered into a number of the weather derivative policies in the name of Terra Nova without its knowledge. In fact, Mollin wrote an e-mail on April 7, 2000, suggesting that he was contemplating suicide as a result of what he did. Mollin has since fled the country.

The documents at issue in this motion are those that were prepared by Elliston during the course of its investigation.

### B. *The Meetings with Governmental Authorities*

On April 17, 2000, Holland and other representatives of Terra Nova had a meeting first with officials of the New York State Insurance Department ("NYSID") and, later in the day, with an Assistant United States Attorney in the Southern District of New York. The meetings were arranged by Terra Nova's outside counsel, LeBoeuf, Lamb, Greene & MacRae. At the meetings, Holland revealed the information he had discovered regarding Mollin and the Terra Nova policies. *See* Deposition of Michael P. Holland, dated July 12, 2002 (reproduced in Declaration of Lorna M. McKenzie in Opposition to Bank of America's Motion to Compel and for Sanctions, dated September 18, 2002, Ex. 3) ("Holland Dep."), at 50–51. Documents gathered as a result of Elliston's investigation were later produced, pursuant to a grand jury subpoena dated April 20, 2000, to the United States Postal Inspector, who had been "appointed" to investigate the matter by the U.S. Attorney's Office. *Id.* at 49. It appears that some of these documents consisted of CWW documents gathered during the Elliston investigation (that is, not work product documents) and have already been produced to Bank of America as part of discovery in this matter. However, some work product created during the investigation was produced to the United States Postal Inspector and has been withheld. *See* Letter to the Court from John D. Gordan, III, dated November 13, 2002, at 1–3.

### C. *The PXRE Lawsuit*

In one of many lawsuits that arose due to Mollin's actions, Terra Nova was sued in the United States District Court for the District of New Jersey by the PXRE Corporation. At the trial in May 2002, Terra Nova called Holland as a witness (over PXRE's objection) to testify concerning Mollin's admission that he had made unauthorized transactions. *See* Order, *PXRE Corporation v. Terra Nova*

*Ins. Co. Ltd.,* No. 00–5314 (D.N.J. May 22, 2002).

### D. *Holland Deposition*

On July 12, 2002, Bank of America took the deposition of Holland in this case. Prior to the deposition, Terra Nova produced to Bank of America a copy of Holland's May 2002 testimony from the PXRE trial. At the same time, Terra Nova informed Bank of America that it would assert the work product doctrine to prevent Holland from testifying about any matters beyond those disclosed at the PXRE trial. Consistent with this position, Terra Nova's counsel instructed Holland not to answer some questions during the deposition regarding what he told the NYSID and the U.S. Attorney's Office. Holland was permitted to state, however, that he remembered that the facts he had gathered during his investigation had been presented during the meetings—though he was not permitted to state what facts he had gathered up to that point. Holland testified that he told the government officials that Mollin had acted without authority, although he did not remember the details of what he disclosed regarding Mollin's actions. Holland was allowed to testify to some of the details of his investigation. Terra Nova's counsel objected, however, to any answer that went beyond the substance of Holland's testimony during the PXRE trial—that is, Holland's recollection of Mollin's own statements that he had acted without authority. *See* Holland Dep. at 50–51; 56–58; 60–61.

## II. *THE MOTION TO COMPEL*

Bank of America contends that because Terra Nova permitted Holland to discuss his investigation with the governmental authorities in April 2000 and provided documents from the investigation to them, Terra Nova has waived the work product protection that otherwise covered the Elliston investigation. Bank of America seeks to question Holland about everything he told the governmental authorities and also to obtain the documents upon which his investigation was based.

### A. *Law Governing Work Product Protection and Waiver*

■ The Supreme Court initially recognized the work product doctrine in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), based on the theory that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510, 67 S.Ct. 385. The Court noted that if attorney work product was freely discoverable, "[t]he effect on the legal profession would be demoralizing [and] the interests of the clients and the cause of justice would be poorly served." *Id.* at 511, 67 S.Ct. 385. The work product doctrine protects not only materials that are prepared by attorneys themselves but also by their investigators or other agents. *See United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

■ Work product protection "is not absolute. Like other qualified privileges, it may be waived." *Nobles,* 422 U.S. at 239, 95 S.Ct. 2160. The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived. *See e.g., Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.,* 200 F.R.D. 183, 188 (W.D.N.Y.2001) (citation omitted); *Granite Partners v. Bear, Stearns & Co. Inc.,* 184 F.R.D. 49, 52 (S.D.N.Y.1999) (citing cases).

#### 1. *Disclosure of Work Product Generally*

■ Unlike the rule for the attorney-client privilege, the protection afforded work product is not waived merely because the material is disclosed to a third party. The reason for this is that there may be legitimate reasons to disclose attorney work product to persons outside the attorney-client relationship. *See, e.g., United States v. Adlman,* 134 F.3d 1194, 1200 n. 4 (2d Cir.1998) (work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection). For example, there may be a common interest with the person to whom the material is disclosed. *See, e.g., United States v. Am. Tel. and Tel. Co.,* 642 F.2d 1285, 1298–99 (D.C.Cir.1980) ("*AT & T*").

Rather, a waiver of work product protection occurs when the covered materials are used in a manner that is inconsistent with the protection. *See Granite Partners,* 184 F.R.D. at 55 ("the issue of waiver rests not on whether a privileged document is introduced into evidence, but rather whether the party's use of the document is unfair and inconsistent with a claim of privilege") (citations omitted). One circumstance that is inconsistent with the need for work product protection is when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary. Case law is clear that "[o]nce a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir.1993). Thus, "a voluntary disclosure of work product to an adversary waives the privilege as to other parties." *Id.* (citations omitted). It is not necessary that the disclosure be made to an actual adversary. In *Medinol v. Boston Scientific Corp.,* 2002 WL 31415692 (S.D.N.Y. Oct. 28, 2002), for example, a corporation had disclosed work product to its independent auditors. Referring to the "adversarial tension" between such parties, *id.* at *3 (quoting Roberta S. Karmel, *A New Watchdog for Public Accountants,* N.Y. Law Journal, Aug. 15, 2002, at 3), the Court held that the work product protection was waived. *Id.* at *4.

The basis for finding a waiver in these circumstances is that work product exists to "promote the adversary system by safeguarding the fruits on an attorney's trial preparation from the discovery attempts of an opponent." *AT & T,* 642 F.2d at 1299 (citation omitted); *accord In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. 309, 314 (E.D.N.Y.2000) (purpose of work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him"). Thus, the protection is unavailable when the disclosure is not made "in the pursuit of such trial preparation" or when the disclosure is made in a manner that is "inconsistent with maintaining secrecy against opponents." *AT & T,* 642 F.2d at 1299. For this reason, even a disclosure to a non-adversary that "substan-

tially" or "materially" increases the likelihood that an adversary will obtain the information results in a waiver of the work product protection. *See, e.g., GAF Corp. v. Eastman Kodak Co.,* 85 F.R.D. 46, 51–52 (S.D.N.Y. 1979); *ECDC Envtl. v. New York Marine & Gen'l Ins. Co.,* 1998 WL 614478, at *4 (S.D.N.Y. June 4, 1998); *accord U.S. Info. Sys., Inc. v. Int'l. Bhd. of Elec. Workers, Local Union No. 3,* 2002 WL 31296430, at *3 (S.D.N.Y. Oct. 11, 2002) (citing cases).

### 2. *Disclosure of Work Product to Governmental Authorities*

The issue of whether a waiver has occurred has frequently arisen when disclosure of work product is made to a governmental authority—usually a law enforcement agency. A waiver will be found if the governmental agency was an adversary, a "potential adversary" or even just "stood in an adversarial position" with respect to the disclosing party. *See, e.g., In re Steinhardt,* 9 F.3d at 234; *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,* 293 F.3d 289, 306 (6th Cir.2002); *United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 687 (1st Cir.1997) ("*MIT*"); *In re Leslie Fay Companies, Inc., Sec. Litig.,* 152 F.R.D. 42, 45 (S.D.N.Y.1993). In other instances, the issue is decided based on whether the disclosure to the governmental agency would "materially" or "substantially" increase the likelihood that the disclosing party's adversary would obtain the information—regardless of whether the governmental agency was itself in an adversarial position to the disclosing party. *See, e.g., U.S. Info. Sys.,* 2002 WL 31296430, at *4; *Sidari v. Orleans County,* 2000 WL 33407343, at *8 (W.D.N.Y. Oct. 3, 2000).

The doctrine has been softened by those courts recognizing that when material is disclosed to the government under an express agreement that it be kept confidential, the disclosure will not waive later assertions of work product protection. *See, e.g., Maruzen Co., Ltd. v. HSBC USA, Inc.,* 2002 WL 1628782, at *2 (S.D.N.Y. July 23, 2002) (citing cases); *cf. In re Steinhardt,* 9 F.3d at 236 ("Establishing a [per se waiver rule] would fail to anticipate . . . situations in which the

[government agency] and the disclosing party have entered into an explicit agreement") (dictum); *but see In re Columbia/HCA,* 293 F.3d at 306 (finding waiver even where confidentiality agreement existed) (citing *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1431 (3d Cir.1991)). In addition, courts have also found no waiver when the disclosure of information to the government was to assist in litigation against a common opponent. *See, e.g., AT & T,* 642 F.2d at 1299–1300; *In re Visa Check/Mastermoney Antitrust Litig.,* 190 F.R.D. at 314.

With this background, the Court will first examine whether Elliston's disclosure was voluntary. *See In re Steinhardt,* 9 F.3d at 235 ("voluntary disclosure of work product to an adversary waives the privilege as to other parties") (citations omitted). We will then consider whether the governmental authorities to which Elliston made the disclosure were in an adversarial position to Terra Nova. Next, we will determine whether the disclosure was made under circumstances that substantially increased the possibility that an adversary would obtain the materials. Finally, we consider the scope of any waiver that occurred.

### B. *Voluntariness of the Disclosure*

▮ Terra Nova (along with Elliston) argues that the disclosure of the Elliston investigation to the governmental authorities was not voluntary. *See* Defendant's Memorandum of Law in Opposition to Plaintiff Bank of America's Motion to Compel and for Sanctions, filed September 18, 2002 ("Def. Mem."), at 7–10; Memorandum of Law of Non–Party Witness Elliston in Opposition to Bank of America's Motion to Compel and for Sanctions, filed September 18, 2002 ("Elliston Mem."), at 4–5. To support its argument, Terra Nova points to New York Insurance Law § 405, which requires New York-licensed insurance companies to report insurance fraud to the NYSID and, if the fraud is over $100,000, to the United States Department of Justice. *See* N.Y. Ins. L. § 405(a); 11 N.Y.C.R.R. § 86.5. Terra Nova argues that its disclosure of information at the meetings was required under this statute and therefore was not voluntary. *See* Def. Mem. at 7–11; Elliston Mem. at 5.[1]

Insurance Law § 405 and its implementing regulation require the submission of a standard form seeking very limited information about an instance of insurance fraud. *See* N.Y. Ins. L. § 405(a); 11 N.Y.C.R.R. § 86.5. The only substantive information required is a "[b]rief statement of suspect transaction and dollar amount of claim"; the identities of the parties to the suspect transaction; and a statement as to whether the transaction has been reported to any other law enforcement agency. 11 N.Y.C.R.R. § 86.5. The statute does not require any other disclosure unless the superintendent of insurance requires such disclosure. N.Y. Ins. L. § 405(a). Here, Terra Nova does not even allege that it submitted the required form. Nor has it claimed that the NYSID or any other governmental entity ever affirmatively sought additional information beyond what would have been required in the form. To the contrary, Terra Nova itself arranged for the meetings with the governmental authorities. While Terra Nova asserts that the reason it arranged for the meetings was to fulfill its obligations under section 405, the meetings—and, particularly, the detailed information given at the meetings—were unnecessary to fulfill that obligation.

Because Terra Nova's disclosure of information and material presented to the NYSID and the U.S. Attorney's Office far exceeded the scope of any compulsion reflected in the law, the disclosure it made during these meetings of the substance of the Elliston investigation was voluntary.

### C. *Relationship of the Governmental Authorities to Terra Nova*

The next question in the waiver analysis is whether the governmental authorities were in an adversarial position with respect to Terra Nova. Terra Nova's central argument on this point is that it was "not the subject of any government investigation over Harold Mollin's actions when Terra Nova disclosed Mollin's actions to the authorities." Def.

---

**1.** Neither Terra Nova nor Elliston argues that the grand jury subpoena of April 20, 2000, rendered their production of documents to the Postal Inspector involuntary.

Mem. at 10. Insurance Law § 405, however, supports the view that the NYSID was at least a potential adversary of—or stood in an adversarial position with respect to—Terra Nova. The statute contemplates that any report will be reviewed by "[t]he insurance frauds bureau" which is expected to "undertake such further investigation as it deems necessary and proper...." N.Y. Ins. L. § 405(b); *cf.* N.Y. Ins. L. § 402(a) (granting the NYSID insurance frauds bureau the power to enforce the statutes relating to insurance fraud). These circumstances call to mind the *MIT* case, in which MIT produced to the Defense Contract Audit Agency ("DCAA") work product because it had been required to do so by regulations governing Defense Department contracts. 129 F.3d at 682–83. The First Circuit held that MIT's relationship with the DCAA was "easily characterized as adversarial" even though MIT was not under investigation by the DCAA. *Id.* at 686. Accordingly, it deemed the work product privilege to have been waived. *Id.* at 686–87.

While Terra Nova itself requested the meeting with the governmental authorities, it has not demonstrated that this was a "benign request to assist the [governmental authorities] in performing [ ] routine regulatory duties." *In re Steinhardt,* 9 F.3d at 234. The circumstances are much more suggestive of the possibility that it was hoping to forestall any investigation (or at least narrow the scope of an investigation) that might have occurred had Terra Nova simply sent in the required Insurance Department reporting form without any elucidation of its own claimed innocent conduct. The relationship between the two parties is thus appropriately characterized as that of "potential" adversaries and as a result there has been a waiver. *See Medinol,* 2002 WL 31415692, at *2 (disclosure of material to party who is "not allied in interest" and does not "have litigation objectives in common" results in waiver).

 When materials are disclosed to a governmental authority to forestall prosecution or to obtain lenient treatment, the purpose of such a disclosure is "foreign to the objectives underlying the work-product doctrine." *Westinghouse Elec.,* 951 F.2d at

1429. In such a situation, work product protection is waived not only as to the governmental authority but also as to all other adversaries. *See, e.g., id.; In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371–75 (D.C.Cir.1984) (because of corporation's disclosure to government adversary, work product protection was waived with respect to a suit between the corporation and its shareholders); *see also In re Steinhardt,* 9 F.3d at 235 ("waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties") (citations omitted). Thus, Terra Nova's disclosure of the documents and of the substance of the Elliston investigation to the governmental authorities waived the work product protection as to Bank of America.

D. *Substantial Increase of Potential that Materials Would Be Disclosed to an Adversary*

There is an additional basis on which the work product protection should be deemed waived in this case. Even if it were not the case that there was an adversarial relationship between the governmental authorities and Terra Nova, the disclosure of the materials to the Government substantially increased the potential that the information gained during the investigation would be disclosed to an adversary.

The meetings with the NYSID and the U.S. Attorney's Office suggest that Terra Nova harbored the hope, even if uncommunicated, that its disclosures would encourage the Government to prosecute Mollin. Mollin certainly was in an adversarial position to Terra Nova—having stolen in its view millions of dollars of premiums. Indeed this Court previously deemed the documents from the Elliston investigation to be protected as work product on the theory that, at a minimum, Terra Nova instituted the investigation because it anticipated litigation against Mollin. *See* Order, dated June 13, 2002 (Docket # 19), at 2–3.

 Disclosing information to governmental authorities in the hope that they will attack an adversary, however, cannot be said to be done "in the pursuit of ... trial preparation." *AT & T,* 642 F.2d at 1299. Thus,

disclosure in such a situation results in a waiver of the work product protection. In *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F.Supp. 591 (S.D.N.Y.1998), for example, a corporation made disclosures to governmental agencies in the hope of fostering actions against a competitor. *See* 999 F.Supp. at 593. The court noted that the parties were "neither adversaries nor allies" when the material was disclosed and that the materials were "submitted voluntarily to stimulate beneficial official action." *Id.* The court held that work product protection was waived, stating that this result "vindicates the principle of full disclosure, prevents the unfairness of selective revelations, and reflects the common-sense perception that in most such cases the privacy attending creation of the work-product had either served its purpose or was of little importance in the first place." *Id.; accord Three Crown Ltd. P'ship. v. Salomon Bros. Inc.*, 1993 WL 277182, at *2 (S.D.N.Y. July 21, 1993) (no protection for work product materials when used to "persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation"); *cf. AT & T*, 642 F.2d at 1299 (protection afforded only when disclosure is made in a manner "not inconsistent with maintaining secrecy against opponents").

When material is disclosed to a law enforcement agency without any agreement regarding confidentiality, there is a strong potential that the material may ultimately become public and thus available to an adversary. This may occur if the material is used at a trial—either as part of the government's case-in-chief or for purposes of cross-examining a witness. *See Sidari*, 2000 WL 33407343, at *8 (work product protection waived when materials were given to prosecutor for use at trial). The government might also be required to disclose the material to a criminal defendant because it consists of the statement of a witness called by the government at trial. *See, e.g.,* 18 U.S.C. § 3500. In addition, the government may be required to disclose the material it has received because it is exculpatory, as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or *Giglio v. United States*, 405 U.S. 150, 92 S.Ct.

763, 31 L.Ed.2d 104 (1972). Even in the absence of charges being brought against a defendant, the law enforcement agency might choose to use the information or materials as part of its investigation in order to induce a witness to cooperate. *See, e.g., U.S. Info. Sys.*, 2002 WL 31296430, at *4. Finally, state or federal freedom of information laws might also require disclosure of any written record of the information. The federal Freedom of Information Act, for example, exempts from disclosure, in the case of criminal law enforcement records, only information furnished by a "confidential" source. *See* 5 U.S.C. § 552(b)(7)(D). Information from non-confidential sources is available to any person (including potential adversaries) as long as the materials are not exempted from disclosure by another section of the statute. As previously noted, Terra Nova made no request that the information it provided be treated as confidential.

■ When disclosure of work product is "made to a non-adversary, it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials." *Westinghouse Elec. Corp.*, 951 F.2d at 1431 (finding waiver of materials disclosed to adversarial governmental agencies). Given that Terra Nova itself arranged for the meeting with governmental authorities, that there was a significant potential for release of the information disclosed, and that Terra Nova made no effort to seek confidential treatment of the information, Terra Nova showed a "conscious disregard" for the possibility that an adversary such as Mollin or Bank of America might obtain access to the information. *Id.; accord U.S. Info. Sys.*, 2002 WL 31296430, at *5 (finding waiver where there was "an unsolicited, uncompelled disclosure of the information" to the Government without any agreement as to confidentiality and "in circumstances that increased the likelihood that the work product would come into the possession of its adversary"). Terra Nova has not shown that maintaining the secrecy of the Elliston investigation was of any importance to it at the time of its meeting with the government agencies. The

Court is mindful of the argument that parties may be discouraged from divulging information to investigative agencies if a waiver will thereby result. *See Diversified Indus. Inc. v. Meredith,* 572 F.2d 596, 604 n. 1 (8th Cir.1977) (en banc). The Second Circuit in *In re Steinhardt,* however, explicitly rejected this argument, noting that

> a corporation has substantial incentives to cooperate with [agency] requests for assistance. Voluntary cooperation offers a corporation an opportunity to avoid extended formal investigation and enforcement litigation by the [agency], the possibility of leniency for prior misdeeds, and an opportunity to narrow the issues in any resulting litigation.... These incentives exist regardless of whether private third party litigants have access to attorney work product disclosed to the [agency]. "When a corporation elects to participate in a voluntary disclosure ... it necessarily decides that the benefits of participation outweigh the benefits of confidentiality ... It forgoes some of the traditional protections of the adversary system in order to avoid some of the traditional burdens that accompany adversary resolution of disputes, especially disputes with such formidable adversaries as [a government agency]."

*In re Steinhardt,* 9 F.3d at 236 (quoting *In re Subpoenas Duces Tecum,* 738 F.2d at 1372) (internal citations omitted). Significantly, *In re Steinhardt* left open the possibility that a waiver might not be found if there is an explicit agreement to maintain confidentiality, *see* 9 F.3d at 236—a circumstance that does not exist in this case.

### E. *The Scope of the Waiver*

 The remaining question concerns what information Bank of America is entitled to. Much of Terra Nova's brief on the scope of the waiver is spent discussing the effect of Holland's testimony during the PXRE trial. *See* Def. Mem. at 12–13. The evidence reflects, however, that Holland's disclosure to the governmental authorities was more extensive than the trial testimony. Thus the only live issue is the waiver resulting from the disclosure to the governmental authorities.

The Second Circuit has not ruled explicitly on the scope of a waiver of work product protection.[2] Some courts have found a broad waiver—often termed a subject matter waiver—of the entire subject of the disclosure. *See In re Martin Marietta Corp.,* 856 F.2d 619, 625–26 (4th Cir.1988), *cert. denied,* 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989); *In re Sealed Case,* 676 F.2d 793, 822–23 (D.C.Cir.1982); *Bowne v. AmBase Corp.,* 150 F.R.D. 465, 485–86 (S.D.N.Y.1993). Thus, in *Bristol–Myers Squibb Co. v. Rhone–Poulenc Rorer, Inc.,* 1997 WL 801454 (S.D.N.Y. Dec. 31, 1997), the Court found that the disclosure of a report to an adversary during litigation waived the protection for "any and all documents" relating to the report and the conclusions it drew. *Id.* at *3. Other courts, by contrast, have limited the waiver to the specific materials disclosed. *See Pittman v. Frazer,* 129 F.3d 983, 988 (8th Cir.1997); *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,* 197 F.R.D. 620, 639 (N.D.Iowa 2000); *In re United Mine Workers of America Employee Benefit Plans Litig.,* 159 F.R.D. 307, 312 (D.D.C.1994) (finding it "contrary to law .... to extend the waiver of attorney work product to encompass previously undisclosed documents related to the same subject matter").

Here, the Court's decision on the scope of the waiver is guided by the nature of Terra Nova's conduct and the policies underlying the work product doctrine. Because all of the information available to Holland regarding his investigation was made available in an oral presentation to the governmental authorities, it is only fair to permit Bank of America to examine the facts that were in Holland's possession at that time. That Hol-

**2.** Contrary to Terra Nova's argument, *In re Grand Jury Proceedings,* 219 F.3d 175 (2d Cir. 2000), is not dispositive of this question as the disclosure there, made during a grand jury proceeding, was "compelled." *Id.* at 191. The Court noted that such a situation is "quite different from ... voluntary disclosure ... where the company, initially at least stands to benefit directly from disclosing privileged materials." *Id.* Moreover, the Second Circuit did not make any holding as to the scope of a waiver, instead remanding the case to the district court to determine if any waiver had occurred. *See id.* at 192.

land freely revealed the contents of his investigation in Terra Nova's presence reflects that Terra Nova had no great interest in ensuring the confidentiality of the investigation—be it the actual facts revealed to the government or the underlying documents upon which the presentation was based. Thus, Terra Nova must permit Holland to be re-deposed and to answer questions regarding what factual information was available to him at the time he met with the government agencies.

In addition, because the work product doctrine protects a party's effort to maintain confidentiality, it would not be served by limiting the scope of the waiver solely to the oral statements of Holland. This is particularly true when Holland is not even able to remember the specifics of his presentation to the governmental authorities but concedes that his presentation disclosed to them the full scope of what he had learned. Thus, Terra Nova must produce any documents relating to the investigation that were in Holland's possession as of April 17, 2000. Obviously, any investigation documents actually given to the government agencies must necessarily be produced as well.

Nonetheless, Terra Nova's failure to protect the secrecy of its information is applicable only to the materials it had in its possession as of the date of its meeting with the government agencies on April 17, 2002, and the documents produced to the United States Postal Inspector (all of which were apparently prepared prior to April 17, 2002). Thus,

the waiver will not extend to any materials generated after that date. In addition, there is no indication that Terra Nova disclosed anything other than "fact" work product inasmuch as Holland testified that he presented only "facts" to the governmental authorities. This suggests that Terra Nova made an affirmative effort to protect the confidentiality of the "opinion" work product of its attorneys. Accordingly, Terra Nova will not be compelled to produce any "opinion" work product. *See, e.g., In re Martin Marietta Corp.*, 856 F.2d at 625–26 (waiver found only as to "non-opinion work product"); *see also* Fed.R.Civ.P. 26(b)(3) (enjoining courts to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation").

## III. CONCLUSION

 For the reasons stated above, the Court finds that Terra Nova has waived its work product protection through the disclosures made to the NYSID, the U.S. Attorney's Office and the United States Postal Inspector. Therefore, the Court grants Bank of America's motion to compel.[3]

SO ORDERED.

---

**3.** Bank of America has also moved for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers on the ground that Terra Nova improperly failed to inform Bank of America about its disclosures of work product to outside parties. Bank of America's most compelling argument is that Terra Nova should have informed the Bank in May 2002 of the disclosures to the governmental authorities. It was at this time that Terra Nova asserted work product protection for the Elliston investigation as part of briefing on the Bank's original motion to compel. As it turned out, Bank of America did not learn of the disclosures until Holland testified about them at his deposition in July 2002.

The motion is denied. Although it is not necessarily meritorious, the Court does not find frivolous the argument that, in order to meet its burden of demonstrating that the work product protection had not been waived, Terra Nova was

required to reveal the governmental disclosures and explain why they had not resulted in a waiver. Nonetheless, this question need not be reached because Terra Nova's conduct did not "unreasonably and vexatiously ... multiply the proceedings" in this case. 28 U.S.C. § 1927. Given Holland's role in the investigation, it was inevitable that he would be deposed and questions put to him probing whether any waiver had occurred. Furthermore, Bank of America would have been required to brief the waiver issue even if had it been informed of the disclosure prior to the May 2002 briefing. Nor would this be a situation calling for a sanction under the Court's inherent powers. The Supreme Court has cautioned that these powers "must be exercised with restraint and discretion." *Chambers v. NASCO*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citing *Roadway Express v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488

(1980)). Given that Terra Nova's obligations on this score are unsettled, Terra Nova could not be shown to have acted in bad faith—a necessary element to invoke the Court's inherent sanctioning authority. *Chambers,* 501 U.S. at 45–46, 50, 111 S.Ct. 2123.