Lara **CURTO**, Plaintiff,

v.

**MEDICAL WORLD COMMUNICATIONS, INC., Eugene Conselyea, Robert Issler, James King, Daniel Perkins, John J. Hennessy, and Romaine Pierson Publishers, Inc. f/k/a Romaine**

**Pierson Acquisition Co., Defendants.[1]**

**No. 03 CV 6327(DRH)(ETB).**

United States District Court,
E.D. New York.

May 11, 2011.

---

1. Although originally named in the Complaint, James Granato is no longer a defendant in this action as all claims against him have been dismissed pursuant to stipulation. (*See* Docket No. 296; Dec. 4, 2007 Elec. Order.)

Liddle & Robinson LLP, by James R. Hubbard, Esq., James A. Batson, Esq., New York, NY, Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP, by Andrew Curto, Esq., Mineola, NY, Meyer Suozzi English & Klein, P.C., by Lois Carter Schlissel, Esq., Garden City, NY, for Plaintiff.

Farrell Fritz, P.C., by John P. McEntee, Esq., Uniondale, NY, Leclaire Ryan, by James P. Anelli, Esq., Newark, NJ, for the Defendants Medical World Communications, Inc., Romaine Pierson Publishers, Inc. f/k/a Romaine Pierson Acquisition Co., Robert Issler, and John J. Hennessy.

Greenbaum, Rowe, Smith & Davis LLP, by Aron M. Schwartz, Esq., Woodbridge, NJ, for the Defendants James King and Daniel Perkins.

### MEMORANDUM & ORDER

HURLEY, Senior District Judge:

### INTRODUCTION

Defendants Medical World Communications, Inc. ("MWC" or the "Company"), Romaine Pierson Publishers, Inc., John J. Hennessy, and Robert Issler (collectively, the "Company Defendants"), joined by defendants James King ("King") and Daniel Perkins ("Perkins") (together with the Company Defendants referred to as "Defendants"), object to the April 21, 2009 ruling of Magistrate Judge Michael L. Orenstein[2] that two April 2003 draft memoranda (the "April 2003 Memos") authored

---

**2.** Upon Magistrate Judge Orenstein's retirement, this case was reassigned to Magistrate Judge E. Thomas Boyle on October 20, 2010.

by Plaintiff Lara Curto ("Plaintiff") were protected by the attorney-client privilege and work product protection.

For the reasons that follow, the Court finds that Plaintiff's conduct post-dating Judge Orenstein's April 21, 2009 decision waives any attorney-client privilege or work product protection that might have applied to the April 2003 Memos. Accordingly, Defendants' objections to Judge Orenstein's April 21, 2009 decision are deemed moot.

## BACKGROUND

This is the fourth appeal Defendants have taken from one of Judge Orenstein's discovery rulings in this case. Defendants previously objected to Judge Orenstein's January 18, 2006 Order in which he held, in essence, that Plaintiff "had not waived her right to assert the attorney-client privilege and work product immunity concerning documents allegedly retrieved from MWC-owned laptop computers used by Plaintiff during her employment with MWC." *Curto v. Med. World Commc'ns, Inc.*, No. 03–cv–6327, 2006 WL 1318387, at *1 (E.D.N.Y. May 15, 2006) (*Curto I* ).[3] In a May 15, 2006 Memorandum & Order, this Court affirmed the Judge's Order in its entirety. *See id.* Within that Memorandum & Order, the Court provided a factual background of this case, familiarity with which is assumed. *See id.* at *1–2. Thus, the Court will provide only that background which is relevant to the current appeal.

In July 2006, while attempting to comply with Judge Orenstein's January 18, 2006 Order directing Defendants to return all electronic copies of documents identified in Plaintiff's initial privilege log, Defendants' computer forensic expert searched Plaintiff's company-issued laptop and uncovered the April 2003 Memos, which were "two intact (i.e., non-deleted), but non-identical [draft] versions of [a] memo [authored by Plaintiff and addressed to defendant Company President] Jack Hennessy." *Curto v. Med. World Commc'ns, Inc.*, No. 03–cv–6327, 2007 WL 1452106, at *1 (E.D.N.Y. May 15, 2007) (*Curto II* ) (internal quotation marks omitted, alterations added.) Although Plaintiff previously represented that she had deleted all her files from the company-issued laptop, apparently she had forgotten about these memos until their discovery by the Company Defendants. *Id.* at *1. The Company Defendants informed the Court of this discovery via letter and Judge Orenstein held a hearing on September 21, 2006 to hear arguments regarding the April 2003 Memos. *Id.* at *2. Relying on *United States v. Adlman*, 134 F.3d 1194 (2d Cir.1998), Judge Orenstein ultimately found that the April 2003 Memos "are protected from discovery by virtue of the work-product privilege...." *Id.* at *1 (citing the Sept. 21, 2006 Tr. at 51:14–15, attached as Ex. L to the June 28, 2007 Decl. of John P. McEntee.)

Defendants objected to this ruling and, by Memorandum & Order dated May 15, 2007, this Court affirmed Judge Orenstein's finding that the April 2003 Memos were protected under the work-product doctrine but remanded the matter for a determination as to whether Defendants had demonstrated a substantial need for the April 2003 Memos and undue hardship. *Id.* at *9. The Court also directed Judge Orenstein to determine whether Plaintiff

---

**3.** The documents at issue in *Curto I* appear to be non-identical versions of the two April 2003 Memos. The *Curto I* documents have been filed with the Court, as part of Plaintiff's opposition to Defendants' objections, as Ex-hibit C to the Declaration of James R. Hubbard, Esq., dated May 19, 2009 ("Hubbard Decl."). The April 2003 Memos have been filed as Exhibit E to the Hubbard Declaration. (*See* discussion, *infra*.)

had waived any work-product protection by putting at issue her retaliation claim. *Id.*

On June 14, 2007, Judge Orenstein held a conference to set a briefing schedule on the remand issues. At this conference, he sua sponte raised the issue of the applicability of the attorney-client privilege to the April 2003 Memos and directed the parties to address this additional issue in their briefs. Defendants objected to Judge Orenstein's June 14, 2007 Order on the ground that it violated the "mandate rule." *Curto v. Med. World Commc'ns., Inc.,* No. 03–cv–6327, 2008 WL 2371155, at *2 (E.D.N.Y. June 9, 2008). By Memorandum & Order dated June 9, 2008, this Court affirmed Judge Orenstein's decision in its entirety. *Id.* at *5.

Judge Orenstein held oral argument on April 21, 2009 to determine the applicability of the attorney-client privilege and work product protection doctrines to the April 2003 Memos. (Tr. at 1.)[4] After hearing extensive argument from both sides, Judge Orenstein ruled that the April 2003 Memos were, in fact, protected by the attorney-client privilege. (Tr. 37, 46, 47.) Having previously determined that the April 2003 Memos were also protected work product, which finding was affirmed by this Court's May 15, 2007 Memorandum & Order, Judge Orenstein turned to the issues that had been remanded: whether Defendants had demonstrated a substantial need for the April 2003 Memos and undue hardship, and whether there had been an "at issue" waiver of the work-product protection. Judge Orenstein determined that Defendants had not shown substantial need for the April 2003 Memos (Tr. 44–46), and that Plaintiff had not waived work product pro-

tection by placing those documents at issue. (Tr. 46.)

Presently before the Court are Defendants' objections to each aspect of Judge Orenstein's April 21, 2009 rulings as being "clearly erroneous and contrary to law." (Defs.' Mem. at 1.) As part of her opposition papers, Plaintiff attached the April 2003 Memos as Exhibit E to the Hubbard Declaration. (*See* Hubbard Decl., Ex. E.) Plaintiff did not file this exhibit under seal or *in camera.* As noted above, Plaintiff also attached copies of the privileged documents at issue in *Curto I* as Exhibit C to the Hubbard Declaration. In her legal memorandum, Plaintiff states that she has included the *Curto I* documents "as exhibits here only for the purposes of assisting in the resolution of Defendants' objections, and Plaintiff specifically reserves and does not waive the privilege or immunity from disclosure that attaches to the documents included." (Pl.'s Opp'n at 4 n.5.) No similar disclaimer is made in connection with the April 2003 Memos, although Plaintiff does note that the *Curto I* documents and the April 2003 Memos are nearly identical. (*Id.* at 6 n. 6.)

In their reply papers, Defendants argue that Plaintiff's act of filing the April 2003 Memos on the publicly-accessible electronic docket and serving hard copies of the April 2003 Memos upon Defendants has effectively waived any attorney-client privilege or work product protection that may have attached to the April 2003 Memos in the first instance. (Reply Mem. at 1, 3–5.) In a sur-reply filed with permission of the Court, Plaintiff contends that "Defendants have been in possession of the Memos, and known their contents" ever since Defendants' computer forensic expert uncovered them in July 2006. (Pl.'s June 1, 2009

---

4. "Tr." refers to the transcript from the April 21, 2009 oral argument before Judge Orenstein, which is available at Docket No. 314.

Letter at 4.) According to Plaintiff, therefore, she did not waive any applicable privilege as to the April 2003 Memos because "Defendants cannot fairly claim that the Memos are newly discovered by Plaintiff, or that their contents are newly disclosed at all." (*Id.*) Defendants maintain that when their computer forensic expert discovered the April 2003 Memos in July 2006, Defendants' counsel immediately sent all electronic and hard copies of the documents to Plaintiff's counsel by overnight courier. (Defs.' June 3, 2009 Letter at 2 n. 2.)

### DISCUSSION

The Court must determine, as an initial matter, whether Plaintiff's act of filing the April 2003 Memos with the Court and serving those documents directly upon Defendants' counsel waived any attorney-client privilege or work product protection that might otherwise apply. While this Court normally leaves the resolution of discovery questions of this nature in the capable hands of the assigned Magistrate Judge, given Judge Orenstein's retirement from the bench and considering the age of the case, this Court will undertake the task in this instance.

### I. Plaintiff Waived the Attorney–Client Privilege

 The attorney-client privilege protects communications between an attorney and a client that were "intended to be and [were] in fact kept confidential," and "made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464,

473 (2d Cir.1996); *see also Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Where, as here, claims are based on federal statutes, "privilege issues are governed by common law." *Local 851 of the Int'l Bhd. of Teamsters,* 36 F.Supp.2d 127, 129 n. 2 (E.D.N.Y. 1998) (citing Fed.R.Evid. 501); *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 441 (S.D.N.Y.1995) (finding that when disputed documents related to both federal and state law claims, "privilege issues are [ ] governed by federal common law"). The party seeking to invoke the attorney-client privilege bears the burden of proving not only the facts upon which the claim is based, *see id.,* but also that any such privilege has not been waived, *see Wellnx Life Scis. Inc. v. Iovate Health Scis. Research Inc.,* 2007 WL 1573913, at *4 (S.D.N.Y. May 24, 2007).

 It is well-settled that "[v]oluntary disclosure of privileged communications to a third party results in waiver of the attorney-client privilege." *Local 851,* 36 F.Supp.2d at 129 (citing *United States v. Gangi,* 1 F.Supp.2d 256, 263 (S.D.N.Y. 1998)); *see also United States v. Stewart,* 287 F.Supp.2d 461, 464 (S.D.N.Y.2003) ("[A]part from a few recognized exceptions, disclosure to third parties of attorney-client privileged materials results in a waiver of that privilege."). Here, it appears that Plaintiff voluntarily (1) filed the April 2003 Memos on the publicly-accessible electronic docket, without undertaking to file the documents under seal or *in camera,*[5] and (2) served copies of the April

---

5. In the last line of Plaintiff's letter sur-reply, she states: "In the event the Court should determine that the filing of the Exhibits in support of Plaintiff's Opposition poses any risk to Plaintiff's assertion of attorney-client privilege or work product immunity, Plaintiff respectfully requests that the Court order that

Exhibits C and E to [the Hubbard Declaration] be placed under seal until further order of the Court." (Pl.'s June 1, 2009 Letter at 5–6.) Once Plaintiff filed the exhibits on the electronic docket, however, the proper procedure would have been to either move to have

2003 Memos upon Defendants' counsel directly. Indeed, Plaintiff has not asserted that the April 2003 Memos were inadvertently or mistakenly filed and served.[6] Moreover, Plaintiff has presented no case law or other legal authority—and the Court's own research uncovered none—to support the proposition that Plaintiff's disclaimer that she "specifically reserves and does not waive" any applicable privilege (Pl.'s Opp'n at 4 n.2) would counteract or negate the effect of her voluntarily disclosing the April 2003 Memos to her adversaries.

Nor is the Court persuaded by Plaintiff's contention that there has been no waiver because Defendants already saw the April 2003 Memos when their computer forensic expert discovered them in 2006. Plaintiff cites the Fifth Circuit's decision in *In re: Avantel, S.A.*, for the proposition that "[t]he 'bell has already been rung' argument 'rests on an unduly narrow conception of the interests protected by the privilege' because the privilege 'protects against both disclosure *and use*' and '[p]reventing the latter is sufficient to promote at least one of the purposes of the privilege.'" 343 F.3d 311, 324 (5th Cir. 2003) (quoting *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 184 (C.D.Cal.2001)). The context of this citation, however, demonstrates the inapplicability of *In re: Avantel, S.A.* here.

Federal courts across the country have "taken three different approaches to the issue of inadvertent disclosures." *Bank Brussels Lambert*, 160 F.R.D. at 442. One position, as articulated by *Bank Brussels Lambert* (and which has not found much favor within this Circuit), is that "the disclosure of a privileged document necessarily constitutes a waiver of the privilege." *Id.* at 442–43. As noted disapprovingly by the Fifth Circuit in the passage of *In re: Avantel, S.A.* cited by Plaintiff above, these cases rely on the principle that "one cannot unring a bell" and so "once an attorney-client communication has been disclosed to a third-party, there is no way to restore its confidentiality." *Id.* at 443 (internal quotation marks and alteration omitted).[7] These cases, however, stand only for the proposition that the attorney-client privileged is not automatically waived when a document is *inadvertently* disclosed. Indeed, the citation provided by Plaintiff is immediately preceded by the Fifth Circuit's statement that: "It is quite obvious that, *if it were determined that Avantel's disclosures were inadvertent*, it still could obtain meaningful relief, specifically, a holding that such documents would be inadmissible at trial." *In re: Avantel, S.A.* at 323–24 (emphasis added) (declining to determine whether the disclosure had been inadvertent, and spe-

---

them placed under seal or move to withdraw them and re-file them under seal.

**6.** The Court notes in passing that, even if Plaintiff did assert that its filing and service of the April 2003 Memos was inadvertent, at least one court within this Circuit has found that a party who inadvertently sent a privileged communications to its adversary for filing pursuant to the court's bundle rule had waived the attorney-client privilege because of the party's "fail[ure] to take appropriate steps to preserve the confidentiality" of the privileged document. *See Local 851*, 36 F.Supp.2d at 131–32.

**7.** A second position, on the other end of the spectrum, is that "a disclosure that was not deliberate can never constitute a waiver of the attorney-client privilege." *Bank Brussels Lambert*, 160 F.R.D. at 442. The third position, which is generally applied by courts within this Circuit, is that "the privilege is waived with respect to mistakenly produced documents only if the producing party failed to take reasonable steps to maintain their confidentiality." *Id.* at 443.

cifically granting the moving party leave "to argue before the district court that [the] disclosures of the purportedly privileged information were not inadvertent"). This is not a case of inadvertent disclosure, nor does Plaintiff claim that the filing and service of the April 2003 Memos was a mistake. Rather, Plaintiff has deliberately and voluntarily disclosed the documents and, as such, the Court does not find *In re: Avantel, S.A.* to be applicable.

Accordingly, the Court finds that Plaintiff waived any attorney-client privilege that may have attached to the April 2003 Memos. *See Stewart*, 287 F.Supp.2d at 464 (finding client waived attorney-client privilege by forwarding a copy of privileged email communication to her daughter); *accord First Am. CoreLogic, Inc. v. Fiserv, Inc.*, 2010 WL 4975566, at *2 (E.D.Tex. Dec. 2, 2010) (finding waiver of attorney-client privilege when party attached privileged communications to motion for protective order and served the documents on all parties); *Tardiff v. Knox Cnty.*, 2007 WL 2413033, at **1–2 (D.Me. Aug. 21, 2007) (noting party's concession of waiver of attorney-client privilege when party submitted privileged email communications as an exhibit to court filing); *Malkovich v. Best Buy Enter. Servs., Inc.*, 2006 WL 1428228, at *1 (D.Minn. May 22, 2006) ("By submitting the affidavit and accompanying exhibits, Plaintiff has waived the attorney-client privilege. . . ."). Therefore, Defendants' objections to Judge Orenstein's April 21, 2009 ruling regarding the applicability of the attorney-client privilege to the April 2003 Memos have been mooted.

## II. *Plaintiff Waived Work Product Protection*

██ "The Supreme Court initially recognized the work product doctrine in *Hickman v. Taylor* based on the theory that 'it is essential that a lawyer works with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.' " *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y.2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947)) (internal citation omitted). The work product protection applies to "protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). However, "[t]he privilege derived from the work-product doctrine is not absolute . . . it may be waived." *Id.* at 239, 95 S.Ct. 2160. "The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived." *Bank of Am., Inc.*, 212 F.R.D. at 169 (collecting cases).

██ A party will waive work product protection when it uses the protected documents "in a manner that is inconsistent with the protection." *Id.* at 170. Because the work product doctrine protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative," Fed.R.Civ.P. 26(b)(3)(A), the test for waiver "is whether the disclosure at issue has 'substantially increased the opportunities for potential adversaries to obtain the information.' " *In re Vitamin C Antitrust Litig.*, 2011 WL 197583, at *2 (E.D.N.Y. Jan. 20, 2011) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y.2000)).

The Second Circuit has held that "[t]he waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993); *see also In re Vita-*

*min C Antitrust Litig.*, 2011 WL 197583 at *2 ("Generally, a voluntary breach of the zone of privacy protected by the work product doctrine—sharing, for instance, theories and strategy with an adversary—destroys the privilege."); *Stewart*, 287 F.Supp.2d at 468 ("Thus, courts have found parties to have waived protection of the [work product] doctrine by voluntarily submitting documents to potential adversaries...."); *Bank of Am., N.A.*, 212 F.R.D. at 170 ("One circumstance that is inconsistent with the need for work product protection is when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary.").

Here, as set forth above, Plaintiff voluntarily sent copies of the April 2003 Memos to Defendants while simultaneously filing them on the publicly-accessible electronic docket. This use of the April 2003 Memos in not consistent with the need for work product protection. Accordingly, Plaintiff's conduct has waived the work product protection afforded to the April 2003 Memos. Defendants' objections to Judge Orenstein's April 21, 2009 rulings regarding the applicability of the work product doctrine are therefore deemed moot.

### CONCLUSION

For the reasons set forth above, the Court finds that—subsequent to Judge Orenstein's April 21, 2009 ruling—Plaintiff waived any attorney-client privilege or work product protection that might have applied to the April 2003 Memos. Accordingly, Defendants' objections to the April 21, 2009 ruling are deemed moot.

The parties are directed to contact Magistrate Judge Boyle in an expeditious manner to schedule a conference to discuss any remaining discovery that needs to be completed in light of this Court's decision.

The parties are also directed to inform this Court, within ten days of the date of this Order, whether they anticipate that the pending summary judgment motion will need to be re-briefed.

**SO ORDERED.**